## McELVEN *vs.* THE STATE OF GEORGIA.

1. A jury will not be heard in impeachment of its own verdict.
2. It is error, in giving the law of reasonable doubts, for the Judge to tell the jury that reasonable doubts usually arise from either want of evidence or conflict of evidence, in a case where the doubt did not arise from either of those causes, but turned solely upon the internal credibility of an explanation which the defendant had given of the circumstances against him, when they were first brought to his notice.

Indictment for Larceny, in Mitchell county. Tried before Judge ALLEN, May Term, 1860.

The plaintiff in error was indicted for larceny. On the trial, Counsel for defendant in the Court below, moved to quash the indictment on the ground that there was but one count therein, and that it alleged three distinct offenses.

The Court overruled the motion, and counsel for defendant excepted.

The Court permitted the Solicitor General to select as to which of the three charges he would try the prisoner on. Defendant then moved to strike out the other two grounds, which motion the Court overruled, and the Solicitor elected to try said defendant on the charge of larceny in taking the sheep of David W. Culpepper, to which defendant excepted.

Counsel for the State then introduced James B. Culpepper, who testified that he, one Curls and David Culpepper, were at defendant's house in said county. Witness and his brother had gone to defendant's farm after some sheep. One of them asked defendant if there were any stray sheep in his pen. Defendant said he thought not, but witness and brother could go and examine. They went to the sheep pen under defendant's gin-house and there found two weathers and one ram, the property of said Culpepper; the sheep were white-colored marked with a cross in the left ear, and a swallow fork in the right; this was the mark of David Culpepper, and was the old mark. There was also a fresh mark in the swallow fork ear, consisting of an underbit and overbit. Witness knew the sheep well—the ram especially, because his tail was slick like that of an opossum. Witness had marked and tended the sheep and knew them. David Culpepper's sheep herded and ranged in the neighborhood of defendant. David Culpepper jumped into the pen and caught one of the sheep, and catching the sheep's head placed it very near the face of defendant, and asked him if he claimed that sheep. Defendant said he did, and then David Culpepper said that he claimed it also, and asked him what this meant, at the same time placing his hands on the fresh marks of the sheep. Defendant looked at the fresh marks and took hold of the ears, which bled freely. Defendant said he must have made a mistake in marking the sheep, as he thought they were sheep belonging to the Parmer stock. Defendant exhibited a bill of sale for the Parmer sheep, from which witness learned what the mark of the Parmer stock was, and that it was a cross and split in one ear, and a swallow fork in the other. Defendant also said this was the Parmer mark; he also said he had bought the Parmer sheep, and had been changing their marks. Witness says that the mark of David Culpepper was a cross in the left ear, and a swallow fork in the right. Defendant knew the mark of David Culpepper well, and had assisted several times in driving his sheep, in this mark, for shearing. Defendant lives in Mitchell county, and the sheep were at his farm and placed in a pen. The range of said sheep was in Mitchell County. This was in sheep-shearing time, in April, 1859, and the sheep were worth two dollars per head.

The State here closed. Defendant introduced no evidence.

There having been a verdict against the defendant, his counsel moved for a new trial upon the following grounds:

1st and 2d. Because the jury found contrary to evidence and the weight of evidence.

3d. Because, after the jury had been charged with the case, and whilst deliberating in their room upon it, Reddish Godwin, one of the jury, stated to the jury that he had once owned the Parmer stock of sheep, and had sold them; and that he knew the sheep were not in the mark of the sheep described in the bill of sale, and that defendant was guilty, which statement was not given in evidence, and which had the effect to influence the jury, and caused a portion of them to find a verdict of guilty. (The affidavit of two of the jurors showed that Godwin did make the statement as above mentioned.)

4th. Because the jury found contrary to the charge of the Court—the Court charging that the intent to steal was a material ingredient in larceny, and that if they believed, from the evidence, defendant intended to steal the sheep, they should find him guilty, but if they should believe that he was mistaken, and took the sheep under a mistake, believing them to be his, then he was not guilty, and that they were to judge of this from the evidence.

5th. Because the Court erred in charging the jury, that if they had a reasonable doubt, the prisoner was entitled to the benefit of that doubt; and that a reasonable doubt usually arose from a want of evidence, or where there was a conflict of evidence.

The Court overruled the motion for a new trial on all the grounds, and defendant excepted.

STROZIER, for plaintiff in error.

Solicitor General SMITH, *contra.*

*By the Court.*—STEPHENS, J., delivering the opinion.

All the assignments of error in this case are overruled, except the 5th in relation to the charge as to reasonable doubts. The Court charged that the prisoner was entitled to the benefit of reasonable doubts, but added that reasonable doubts usually arose from either a want of evidence or a

conflict of evidence. This addendum had a tendency to unduly depreciate the doubt urged in this case, by an intimaion that it rested on an *unusual* ground, for whatever doubt there was, did not arise from want of evidence nor from conflict of evidence, but turned solely upon the *credibility* of a part of the evidence, its credibility being attacked on the ground, not of conflicting evidence, but of its own unreasonableness. A part of the evidence was an explanation which the defendant gave when the sheep were found in his pen, to the effect that he had mistaken these sheep for some of his own. The reply to this was, that it was a mere fabrication entitled to no credit. Now there are two circumstances which, in my judgment, tend strongly to sustain it. One is, that while it had been given long before the trial, and was of a character to be easily exposed, if false, it was *not* exposed. The other is, that while there is a very close resemblance between the mark of these sheep and the mark of his own, as described in his bill of sale, the only difference is one *additional* mark in *his* own. In fabricating a mark with a view to protecting himself in stealing Culpepper's sheep, as it was alleged he did, he might have *omitted* a mark which Culpepper's sheep had, from overlooking it, but he would hardly have *added* one which they did not have. To suppose, therefore, that the mark in that bill of sale was a fabricated one, is supposing that he fabricated it for his own detection and not for his protection. These circumstances commend his story, to my mind, as a reasonable one. All the doubts in the case turned upon its reasonableness. The question was, not whether the cause of the doubts was an unusual one, but whether it was a reasonable one. If the doubts were reasonable, it was immaterial whether they arose from a usual or an unsual cause, and the attention of the jury ought not to have been directed to such an issue, by even the slightest intimation.

Judgment reversed.