LOVETT *vs.* THE STATE OF GEORGIA.

| 80   255|
|126   587|
| 80   255|
|129   171|
|130   167|

1. Though the jury trying a criminal case may not have deliberated
for more than an hour and a half, the court, if fairly satisfied that
they cannot and will not agree upon a verdict, may discharge
them and declare a mistrial.
2. A plea of former jeopardy is not ready for final adjudication until
traversed or demurred to. If it misrepresents or does not fully
represent the action of the court on the former trial, the whole of
such action is nevertheless open for consideration in ruling upon
the plea, but if not already recorded, it should first be entered of
record *nunc pro tunc*. The court should not overrule a plea be-
cause of matter of fact which is outside both of the plea and the
record, although such extrinsic matter may be within the knowl-
edge and recollection of the judge.
3. The meat alleged to be stolen from the house being in a sack, and
the prisoner having in the same room a sack of his own with meat

in it, what he said to a neighbor soon after arriving at home, tend-ing to show that he had taken up and brought away the wrong sack by mistake, was admissible evidence in his behalf.

4. The error of excluding such evidence is not repaired by submit-ting to the jury a written recital of it after the witness had left the court, and after the argument had progressed to an advanced stage.

January 25, 1888.

Criminal law. Jury and jurors. Former jeopardy. Pleadings. Practice in superior court. Evidence. Before Judge ADAMSON. City court of Carrollton. August term, 1887.

Reported in the decision.

COBB & JUHAN, for plaintiff in error.

C. P. GORDON, solicitor, and W. F. BROWN, for the State.

BLECKLEY, Chief Justice.

1. It is not disputed that where a mistrial has been properly declared, the prisoner may be again tried. *Nolan vs. The State,* 55 *Ga.* 521 ; Constitution of 1877, Code, §5000. But the plea alleges that after the jury had delib-erated only about one hour and a half, the court, without the consent and against the protest of the prisoner, dis-charged them. The point of objection is, that the court did not wait long enough before declaring a mistrial. The law prescribes no definite period of time, and unless the contrary appears, it should be taken for granted that the court acted upon proper evidence of improbability that the jury could or would agree. Had the plea been de-murred to, there would have been no error in overruling it or pronouncing it insufficient, provided there was of re-cord a proper order declaring a mistrial. For any abuse of discretion in declaring a mistrial, a writ of error, if sued out in proper time, would doubtless lie to this court; and in addition to that, were the abuse wilful and oppressive,

the judge would be answerable for it to the impeaching power.   On the whole, there is little danger that the practice of prematurely declaring mistrials will become prevalent.

2. From the record before us, we are unable to discover that the plea was either traversed or demurred to.   The court overruled it partly upon matters which he recites as additional facts to those contained in the plea.   If these facts were material, they should first have been entered of record *nunc pro tunc*, unless they were already on record. That was the course taken in *Holman vs. The State*, last term, and we consider it the proper practice.   79 *Ga.* 155. How the court can look beyond both the plea and the record for facts on which to dispose of the plea, is not plain to us, and as at present advised we think it cannot be done.

3. The ultimate question upon which the guilt or innocence of the prisoner turned was, whether he took the wrong sack by mistake.   What he said shortly after arriving at home was evidence on that point.   He took the sack late in the afternoon; the distance to his home was less than a mile; and that evening he said to Nan Wallace, who lived in the same house but in a different room, that he had been in the kitchen where his wife was getting supper, and she had cut a large piece of meat which he had brought and which did not belong to him, and he thought somebody had played off a trick on him, and he was going to carry the meat back.   This statement was made pending his possession, and tended to explain it.   The possession being continuous, its *res gestæ* were continuous, and the statement was embraced therein.   *Walker vs. The State*, 28 *Ga.* 256; *McElven vs. The State*, 30 *Ga.* 872; *Hall vs. The State*, 34 *Ga.* 208.   It was regularly offered in evidence, and the court rejected it, which was error.

4. We do not think the error was cured by what the court did after the witness had departed, after the evidence had closed, and after one of the counsel for the prisoner had addressed the jury.   Whilst the other counsel for the

v 80-17

prisoner was making his concluding argument, the court permitted him to read to the jury as evidence what the court had written out as the evidence of Nan Wallace. This came too late, and it did not come directly from the witness herself. The jury had not heard her testify; they had no opportunity to see her manner, or be impressed by her person and presence. It was the prisoner's right to have his witness confront the jury, and utter her testimony fresh and warm from her own lips. After it had cooled upon the dry paper upon which the court had written it down, it may have been much less effective. The jury, it seems, had been sent out of the room whilst the witness recited on oath to the court, and it was from that recital that the paper was prepared which was finally read to the jury.

There ought to be a new trial. The head-notes are to be taken as a part of this opinion.

Judgment reversed.