JENKINS *et al. v.* JENKINS.

1. Where the direct evidence touching the fact of an alleged marriage is conflicting, one of the parties to such marriage affirming and the other denying that it took place, and where all the material circumstances save the fact that the party denying it contracted a subsequent marriage with a third person, which was regularly solemnized, go to support and corroborate the affirmative witness, a finding by the jury to the effect that the testimony of that witness was true is not contrary to evidence or to law.
2. The presumption of law, founded on cohabitation and repute, that a marriage had taken place, will not prevail over proof of a subsequent marriage in fact by one of the parties with a third person; but notwithstanding such proof, circumstantial evidence, as well as direct, may be used to establish the actual occurrence of such prior marriage as matter of fact to be found by the jury.

April 17, 1889.

Alimony. Evidence. Husband and wife. Marriage. Witness. Verdict. Presumptions. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1888.

Reported in the decision.

JOHN A. WIMPY, for plaintiffs in error.

R. J. JORDAN, *contra.*

BLECKLEY, Chief Justice.

This, at bottom, is a controversy between two ladies over property. These litigants may be distinguished by the lady Theresa and the lady Josie. The former claims alimony out of property which Jenkins, the disputed husband, conveyed to the latter in April, 1887, by deed founded on love and affection. The marriage of

Jenkins to Josie, in October, 1886, publicly, in Atlanta, Georgia, by license and a clergyman, in the presence of many witnesses, is clearly proved by the evidence, and indeed was an admitted fact in the pleadings. An alleged previous marriage by the same Jenkins with Theresa is in dispute. This marriage, if it occurred at all, took place in June, 1882, at Stapleton, on Staten Island, State of New York, by a clergyman, in the presence of only one person. The name of the clergyman has been forgotten, and the name of the other person, who was an aged female, is not remembered in full, her christian name having also been forgotten.

Jenkins was a United States soldier in garrison on the island. In November, 1884, his time of service having expired, he came to Atlanta and located there, bringing Theresa with him. He resided in Atlanta nearly two years before separating from her. According to her testimony, she bore three children, two of whom are dead. Both upon the island and in Atlanta, according to some of the evidence, he recognized her as his wife, introduced her as such, and cohabited with her. After the separation he agreed to make her a small monthly allowance in money, which he paid to her for several months, and then discontinued the payment. She testified on the trial of the present case to the fact of the marriage, and that the clergyman gave her a marriage certificate, which she kept until Jenkins took it away from her in Atlanta and burnt it up. She stated that while residing on the Island, she kept this certificate in a frame, hung up in her room where it could be seen and read. One of her witnesses testified that he had seen it and read it. Jenkins, in his testimony, denied that any marriage took place, or that there was any marriage certificate, or that he had destroyed it. In its last analysis the case resolved itself into a question of credibility of witnesses, the only two wit-

nesses examined who knew whether the marriage actually took place being Theresa and Jenkins, both of them parties to the bill, one as complainant and the other as defendant.    The jury found for the complainant, thereby endorsing her credit and repudiating his.

The proceeding was for alimony only, as authorized by section 1747 of the code, and it was claimed in behalf of both the complainant and her child.    The bill was filed in June, 1887.    The jury allowed $15 per month, and made it a charge upon the property in controversy. A motion was made for a new trial, on the usual grounds, and because the court erred in charging the jury thus:    "Circumstantial evidence is that which tends to prove the fact in question by the proof of other facts from which it may be inferred.    If the fact to be proved were a marriage, an instance of direct testimony would consist in the sworn statement of a witness who was present at the marriage and observed the performance of the ceremony.    An example of circumstantial evidence in a case of that kind would consist in such a set of facts surrounding the parties supposed to be man and wife in their relation to each other and attendant upon their lives as that, from these facts, it could be reasonably inferred that a marriage had occurred."

1. The evidence is voluminous, and every word of it has been carefully read and the whole carefully considered.    The material circumstances, except the one fact of marriage in Atlanta with Josie shortly after ceasing to cohabit with Theresa, all tend to support and corroborate the testimony of Theresa.    If her testimony was true, the verdict was undoubtedly correct.

2. Whether the court erred or not in defining circumstantial evidence, is easily seen by comparing the charge complained of with section 3748 of the code, which states that "direct evidence is that which immediately

points to the question at issue.  Indirect or circumstantial evidence is that which only tends to establish the issue by proof of various facts sustaining by their consistency the hypothesis claimed."  The charge as given, first described direct evidence as "that which points immediately to the fact to be proved," and then proceeded to circumstantial evidence, etc. in the language quoted from the motion for a new trial. We think that in sense and substance the charge and the code are identical; nor do we understand the learned counsel for the plaintiff in error to deny this.  But his point in argument was, that the court should have delivered no charge whatever upon circumstantial evidence, inasmuch as an actual marriage, regular in all respects, with Josie, was established by direct evidence.  He relies upon 1 Bishop on Marriage and Divorce, §§444–446, as illustrated by Taylor *v.* Taylor, 1 Lee (5 Eng. Ec. Rep.), 571; Chamberlain *v.* Chamberlain, 71 N. Y. 423; Poultney *v.* Fairhaven, Brayton (Vt.), 185; Clayton *v.* Wardell, 5 Barb. 214 (same case in 5 Comst.) Myatt *v.* Myatt, 44 Ill. 473; Jones *v.* Jones, 45 Md. 144; Jones *v.* Jones, 48 Md. 391.
  Some of these cases may go to the extent contended for; but Mr. Bishop's summing up of the result (§446) is this: " In general, and by the opinions of most judges, if, while three persons are living, two of them cohabit matrimonially, and then, separating, one of them and the third do the same, no marriage in either instance will be presumed from such mere cohabitation and repute.  But if the actual fact of a marriage is proved as introducing either one of the cohabitations, it will not be invalidated by the evidence of the other."  That Bishop intends to draw a distinction between presuming a marriage from mere cohabitation and repute, and proving a marriage by circumstantial evidence, is plain from what he says in subsequent sections (§§485–

493).   The true doctrine of the authorities is, that where two alleged marriages compete, and one of them is proved as a fact, whether by direct or circumstantial evidence, the other cannot be left to stand upon the mere legal presumption founded on cohabitation and repute.   But withdrawing from certain facts their consequence as a presumption of law, does not prevent them, in connection with other indirect facts, from becoming plenary proof as a presumption of fact distinguished from a presumption of law.   Our code, §3752, says, " Presumptions are either of law or of fact.   The former are conclusions or inferences which the law draws from given facts; the latter are exclusively questions for the jury, to be decided by the ordinary test of human experience."   Where there is a legal presumption, the law does the reasoning, and draws the inference; where presumptions of fact are involved, the jury are left to do the reasoning, and to make an inference or not according as they shall believe the premises warrant.   With no competing actual marriage proved, the law presumes marriage from cohabitation and repute. But this presumption the law declines to raise in opposition to a competing marriage actually proved.   Here the jury were not instructed to apply any legal presumption whatsoever, but were left to use all the evidence, both direct and circumstantial, in ascertaining whether the actual fact of marriage was established.

In another part of the charge they were instructed that "the burden of proof in this case is upon the complainant.   What that means is, that it is for the complainant to satisfy you of a marriage between her and the defendant, John R. Jenkins, and all the other facts essential to a recovery on her part, and not for the defendants to show to the contrary.   The complainant carries this burden when she shows you that the greater weight of evidence is in her favor."   Again, "If you believe from

the evidence, after you have considered it all fairly, that the complainant was married to John R. Jenkins, as she alleges (etc. etc.), then you ought to find in favor of the complainant. . . . On the other hand, if you should believe from the evidence, after you have attentively gone over it all, that there was never any marriage between the complainant and the defendant, John R. Jenkins, then your verdict ought to be in favor of both these defendants." It is plain that the court intended the case to turn upon the establishment or non-establishment of an actual marriage by the complainant with Jenkins, as a matter of fact solely, and with no aid from any legal presumption whatsoever. We can recognize as sound law for us no authority which prevents actual marriage from being established by circumstantial as well as by direct evidence. According to section 3750 of the code, the rules of evidence on all trials are the same, save where exceptions are made by statute. We have no statute that confines the proof of marriage in any case to direct evidence, or declares that marriage cannot be shown as a fact by circumstantial evidence. In this case both classes of evidence were combined, and the court was correct in explaining the nature of both to the jury, and in not restricting the jury to the consideration of one class only.

*Judgment affirmed.*