### DRAWDY, administrator, *v.* HESTERS, guardian.

1. Evidence of general repute in the neighborhood is admissible on the trial of a suit involving the issue of marriage vel non.
2. Declarations of a person since deceased, wholly in favor of the interest of the declarant, and which are not a part of the res gestæ, are mere hearsay and not admissible in evidence. 　　　　　　　　•
3. When the fact of marriage is in issue—whether a consensual or a ceremonial marriage, the subsequent conduct of the man and woman said to have been the parties to it is receivable in evidence as a circumstance bearing upon the issue. Where equivocal conduct such as cohabitation is relied upon as a circumstance material to the issue, declarations of one of the parties since deceased, made pending the period of cohabitation, disaffirming the marriage. are admissible under the principle of res gestæ, for the purpose of showing the character of the cohabitation.
4-6. If a cohabitation between a man and a woman is shown to have been illicit in its inception, in the absence of proof to the contrary, the illicit relation will be presumed to have continued throughout the period of cohabitation. Such presumption may be overcome by direct or circumstantial evidence affirmatively showing that, pending the illicit relation, the parties entered into an agreement to become husband and wife, and thereafter continued the cohabitation in the new relation. The burden of proof is upon the party asserting the agreement.

Submitted July 4, 1907.—Decided February 22, 1908.

Appeal. Before Judge Spence. Berrien superior court. January 14, 1907.

*Alexander & Gary, Fulwood & Murray,* and *H. B. Peeples,* for plaintiff in error. *Cranford & Walker, L. E. Lastinger,* and *Buie & Knight,* contra.

ATKINSON, J. 1. There was evidence that Lewis K. Drawdy and Jane Drawdy, for a number of years, had lived in the same house; and that two children, Lizzie and Daniel, were born to them,

the former before the period of cohabitation commenced and the latter afterwards. In an effort to prove that the marriage relation existed between the two, the plaintiff introduced witnesses who testified, in effect, that it was the general repute in the neighborhood where the parties resided that Lewis K. Drawdy and Jane Drawdy were husband and wife. This testimony was objected to on the ground that it was hearsay, opinion evidence, and incompetent to prove marriage. The objection was overruled, and exception taken to this ruling in the motion for new trial. It is contended by counsel for the plaintiff in error that this evidence was inadmissible under Civil Code, §5177, which provides: "Pedigree, including descent, relationship, birth, marriage, and death, may be proved by the declarations of deceased persons related by blood or marriage, or by general repute in the family," etc., and under the decisions of *Lamar* v. *Allen,* 108 *Ga.* 158 (33 S. E. 958), holding that "relationship can not be proved by general repute in the community;" and *Greene* v. *Almand,* 111 *Ga.* 736 (36 S. E. 957), ruling in effect that the sayings of a deceased relative are not competent evidence on the question of pedigree, unless the relationship itself is established by other evidence; and *Malone* v. *Adams,* 113 *Ga.* 791 (39 S. E. 507, 84 Am. St. R. 259), ruling that on an issue of devisavit vel non the caveatrix may prove her relationship to the decedent by his declarations to that effect. It is contended that these authorities confine evidence of repute, on an issue of marriage vel non, to repute in the family concerned, and do not permit proof of general repute in the community. This contention is not well founded. The rulings in the cases cited deal directly with matters of pedigree, other than marriage, such as "relationship," etc., and are simply in accord with the generally recognized rule that, in questions of that character, testimony or declarations of those persons only who are or were related by blood or marriage to the person whose pedigree is in question are admissible. 1 Bish. Mar., Div. & Sep. §§1160, 1161; 1 Gr. Ev. (16th ed.) §114, c. [103]; 2 Andrews' Am. L. (2d ed.) p. 1665; 15 Am. & Eng. Enc. L. (2d ed.) 315; 22 Am. & Eng. Enc. L. (2d ed.) 642, 650; 16 Cyc. 1211; 3 Wigmore on Evidence, §2083. The manner of proving marriage, on an issue of marriage vel non, forms an exception to the general rule. The fact of marriage is a matter of public interest, and general repute in the community is admissible upon such an issue.

In Hubback's Ev. of Suc. 244, 48 Law Lib. 182, it is said: "Reputation of marriage, unlike that of other matters of pedigree, may proceed from persons who are not members of the family. The reason of the distinction is to be found in the public interest which is taken in the question of the existence of a marriage between two parties; the propriety of visiting or otherwise treating them in society as husband and wife, the liability of the man for the debts of the woman, the power of the latter to act suo jure, and their competency to enter into new matrimonial engagements, being matters which interest not their relations alone, but every one who, by coming in contact with them, may have occasion to regulate his conduct accordingly as he understands them to be married or not." In the case of *Clark* v. *Cassidy,* 62 *Ga.* 410, Jackson, J., speaking for the court, said: "The burden, in our judgment, was upon Clark to show his marriage to the intestate, as his claim to the goods rested entirely upon that allegation being true. . . He claimed title from the intestate by virtue of being her husband and heir, and that she owed no debts, and his is the burden to show that title by producing proof of the marriage. This may be done by record evidence, or by witnesses who saw the ceremony performed, or heard the contract of marriage solemnized, or by such circumstances as the act of living together as man and wife, holding themselves out to the world as such, and repute in the vicinity and among neighbors and visitors that they are such, and indeed all such facts as usually accompany the marriage relation and indicate the factum of marriage. The evidence in each case is for the jury." See also, in this connection, *Jenkins* v. *Jenkins,* 83 *Ga.* 283 (9 S. E. 541, 20 Am. St. R. 316); 1 Bish. Mar. Div. & Sep. §§932, 936, 1182; 1 Gr. Ev. (16th ed.) §114, c. [103]; 1 Andrews' Am. L. (2d ed) 622, 626, 627; 26 Cyc. 888; 8 Enc. Ev. 445-6. For reasons obvious from what has been said, *Clark* v. *Cassidy,* 62 *Ga.* 410, is not in conflict with *Lamar* v. *Allen,* 108 *Ga.* 162 (33 S. E. 958). The point which we now have under consideration relates merely to the admissibility of evidence and does not call for a ruling with regard to the sufficiency of evidence to prove marriage. Under the doctrine announced in the case of *Clark* v. *Cassidy,* and *Jenkins* v. *Jenkins,* supra, and other authorities to which we have alluded, the testimony was clearly admissible.

2. It appeared that Lewis K. Drawdy had been slain. At the

next term of court after the homicide, Jane Drawdy appeared as a witness before the grand jury, while an investigation was being made with regard to the crime involved in the homicide. After appearing before the grand jury, but before the trial of the case at bar, Jane Drawdy died. On the trial of the case at bar, it was proposed to prove by a witness that when Jane Drawdy appeared before the grand jury, she stated in effect that there was a marriage contract between herself and Lewis K. Drawdy, and that in pursuance thereof they had lived together. This testimony was admitted over objections that the declarations were self-serving and inadmissible to prove marriage; that they were self-serving because (*a*) they tended to create an estate for declarant and her children (Lewis K. Drawdy being dead); (*b*) that the declaration might have been induced to prevent a criminal prosecution against herself for the offense of living in a state of fornication. The defendant excepted. We think the court committed error in admitting this testimony. The declaration was made after the death of Lewis K. Drawdy, and consequently after the termination of any relation which might have existed between them. Under these conditions, the declarations could not, under any view, be admitted as a part of the res gestæ. If the declarations were admissible under any theory whatever, it would be under the rule announced in the Civil Code, §5181, which provides: "The declarations and entries of a person, since deceased, against his interest, and not made with a view to pending litigation, are admissible in any case." The declarations were not admissible under this theory, for the reason that they were in the interest of the declarant and not in any respect against her interest. The objections to the testimony indicated the two instances in which the effect of the declarations would be in the interest of the declarant. That is to say, it was to the interest of the declarant to establish the marriage relation, for the purpose, first, of participating in a distribution of the estate of Lewis K. Drawdy; and second, for the purpose of shielding herself against any possible prosecution for having lived in a state of fornication. Under these conditions, the declarations must be regarded as merely hearsay, and not admissible for any purpose. The section of the code to which allusion has been made was considered and applied in the case of *Massee-Felton Lumber Co.* v. *Sirmans,* 122 *Ga.* 297 (50 S. E. 92). The ruling in that case

clearly supports the doctrine which we now announce, namely, that the declarations of persons since deceased, which are not a part of the res gestæ, will not be admitted, if the declarations are wholly in favor of the interest of the declarant.

3.  The defendant offered to introduce the testimony of several witnesses to the effect that Lewis K. Drawdy, on several separate occasions before his death and during the alleged period of cohabitation between Lewis Drawdy and Jane Drawdy, had declared to them that he was not married and had never married the said Jane Ivey [Drawdy].  The defendant also offered to introduce the original record made by the census enumerator for the district in which, Lewis Drawdy and Jane Drawdy lived, together with the testimony of the census enumerator who had made the entries; for the purpose of showing that Lewis Drawdy stated to the census enumerator that he was the head of a family consisting of himself and his mother, and that he had no children, and that at the same time he stated to the same census enumerator that Jane Ivey was the head of a family consisting of herself and her two children, Daniel and Mary Ann E. Ivey, ages five and eight years, and that these parties were the same persons as have been designated in this record as Jane Drawdy, Daniel Drawdy, and Elizabeth Drawdy.  This evidence was excluded upon motion of counsel for the plaintiffs. Among other things, the plaintiffs relied upon the fact of cohabitation as a circumstance to prove the marital relation between Lewis K. Drawdy and Jane Drawdy.  The proposed evidence was intended to prevent the establishment of any such presumption. "When the fact of marriage is in issue—whether a consensual or a ceremonial marriage, the subsequent conduct of the man and the woman said to have been parties to it is receivable to evidence the marriage." 1 Wig. Ev. §268; 3 Wig. Ev. §§2082-3.  Cohabitation of the parties is of course their conduct, and may be received as a circumstance.  But the fact of cohabitation is equivocal, being consistent with a meretricious or marital relation.  Whether the circumstance should weigh in favor of the marriage relation or against it is open to explanation, and would depend upon the manner and intent of the parties so cohabiting.  The character of the cohabitation, therefore, becomes material.  This leads to the inquiry: will the declarations of the husband, since deceased, made during such period of cohabitation, disaffirming the marriage rela-

tion, be received in evidence as a part of his conduct, and in explanation of the character of the cohabitation? It is provided in Civil Code, §5176: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence, are facts to explain conduct and ascertain motives, they are admitted in evidence, not as hearsay, but as original evidence." In 1 Gr. Ev. (16th ed) 191, it is said: "Where a person enters into land in order to take advantage of a forfeiture, to foreclose a mortgage, to defeat a disseisin, or the like; or changes his actual residence, or domicile, or is upon a journey, or leaves his home, or returns thither, or remains abroad, or secretes himself; or, in fine, does any other act, material to be understood; his declarations made at the time of the transaction, and expressive of its character, motive, or object, are regarded as 'verbal acts, indicating a present purpose and intention,' and are therefore admitted in proof like any other material facts." The suit of *Dawson* v. *Callaway,* 18 *Ga.* 573, was in trover for the recovery of a slave. John Watts and Susannah Watts were brother and sister, and lived together. Objection was taken to testimony of a witness that "she knows, after the negro was brought home, Susannah Watts claimed the negro." It was held that the evidence was properly admitted, the court saying: "Thus, living together, prima facie, by presumption of law, they were in the joint possession of the slave. Any declaration of either, made while they were so living together, explanatory of the nature of the possession, would therefore be admissible as evidence, for the one who made it, under the principle of res gestæ." The case of *Hansell* v. *Bryan,* 19 *Ga.* 167, was a suit in trover to recover slaves. The plaintiff in the court below sought to establish title by proof of a parol gift. In support of his claim, testimony was admitted of declarations by the donor, since deceased, tending to support the theory of a gift. The defendant then offered in evidence testimony going to show other declarations of the donor at other times, which were inconsistent with the theory of a gift. The testimony offered by the defendant was not admitted; and upon review in the Supreme Court that ruling was reversed upon the theory, that, inasmuch as the declarations were made while the donor continued in possession, they were explanatory of the character of such possession and admissible as a part of the res gestæ. Starnes, J., speaking for the court, among other things, said: "It is true that

this continuing possession of the father may not be inconsistent with the fact of a complete gift from him to his son; but it was for the jury to decide whether or not this possession of the father was a possession for the son. There was the fact that the father did continue in possession, and we think that, under the circumstances, *what he said whilst so continuing in possession should have been submitted to the jury."* There are many cases where it has been held proper, as a part of the res gestæ, to admit declarations accompanied by actual possession, tending to show the character of possession, where the declarations were against the interest of the declarant. We have preferred to cite the case of *Dawson* v. *Callaway* and *Hansell* v. *Bryan,* supra, because the declarations in those cases were in favor of the interest of the declarant, and in that respect similar to the declarations now under consideration. See also other cases where declarations in the interest of the declarant were admitted as a part of the res gestæ, as follows: *Lovett* v. *State,* 80 *Ga.* 255 (4 S. E. 912), and cit.; *Kerr* v. *State,* 105 *Ga.* 656 (31 S. E. 739). The declarations which were excluded in the case at bar could not be said to be against the interest of the declarant. If there was anything in the mind of Lewis K. Drawdy relative to his own interest at the time of making the declarations, they would appear to be in his favor rather than against his interest. Independently of everything else, they might be self-serving and not admissible; but, taken in connection with the equivocal act of cohabitation existing at the time of the declarations, they were admissible under the theory of res gestæ, as tending to indicate the character of the cohabitation, and should have been admitted, not for the purpose of proving an independent fact, but as a part of the conduct relied upon to characterize the cohabitation.

4. The court charged the jury: "But, if you should find from the testimony submitted to you, from all the facts and circumstances proven before you, from these facts and circumstances, that the preponderance of testimony shows that they did enter into a marriage contract by each consenting, and assumed the relation· of man and wife, and that afterwards they lived together and cohabited and held themselves out to the world or to the neighbors or neighborhood as being man and wife, you would have the right to infer from these facts and circumstances, if you believe they contracted this marriage in that way, you would have the right to infer it;

and if you find that to be true you should find in favor of the plaintiffs." This charge is assigned as error, because it was "calculated to mislead the jury and cause them to infer and find a marriage contract from rumor, general reputation, or repute in the community or neighborhood in which they lived." A marriage in Georgia may now be contracted as at common law. *Smith* v. *Smith,* 84 *Ga.* 440 (11 S. E. 496, 8 L. R. A. 362). At common law, marriage between persons competent to enter into the relation may be contracted by an agreement between the man and woman to become husband and wife, and in pursuance of such an agreement entering into a state of cohabitation. 1 Andrews' Am. L. (2d ed.) §482; 1 Bish. Mar., Div. & Sep. §320; *Askew* v. *Dupree, 30 Ga.* 173. Marriage may be inferred from proof of cohabitation and that the parties held themselves out to the world as husband and wife, and such proof may be made by general repute among neighbors and others in a position to know the facts. In 1 Andrews' Am. L. (2d ed.) §486, it is said: "Where the only proof in the case is of continuous cohabitation, the presumption is that it was lawful. Where to this proof is added some affirmative proof of holding themselves out as man and wife, it adds so much to the force of the presumption, and length of time strengthens the probative force of the presumption. This presumption of marriage from connubial habit is one of the strongest known to the law, and is to be repelled only by clear evidence. Evidence of repute, that is, the reputation of the parties among their acquaintances as to whether they are man and wife, is always admissible, and such proof strengthens the force of the presumption from connubial habit." The charge complained of might have been more specific, but it was not erroneous for the reasons assigned.

5. The court further charged the jury as follows: "I charge you, gentlemen, that if you believe that these people went together, their intercourse started in violation of the law, they cohabited unlawfully, it was illicit cohabitation, then before you would be authorized to find that they contracted common-law marriage afterwards, you must have some evidence; it is incumbent on the plaintiffs to submit some facts and circumstances from which you could reasonably infer it. They must submit to you a preponderance of testimony to show that the illegal relation was brought to an end by the acts and consent of the parties, Lewis Drawdy and the

mother of these children. You look to the evidence, gentlemen, and see whether or not that was done. The plaintiffs insist that all of the testimony shows that Lewis Drawdy and the mother of these children for a number of years before their death made up their minds to put an end to their unlawful relations, shortly after the birth of the oldest child, that they voluntarily took a trip from home, and that it was understood, a matter of notorious repute in the community, that they went off for the purpose of getting married, contracting marriage. The plaintiffs insist that they have shown that this was the express purpose of Lewis Drawdy when he took this trip off, and that there is no proof to show that they went for any other purpose; that there was no necessity for them to go off, no reason for it, other than to get married, to enter into marriage relations, one with the other; that, having gone, one day, when they came back, they admitted and stated to friends and neighbors that they were married, and were then living as man and wife. The plaintiffs insisted that that relation continued for a number of years and until their death, and it was generally understood in the community that they were man and wife. You look to the evidence and see whether or not that is true; see if you all are satisfied of that from the testimony." The defendant assigned error upon the charge, upon the ground that it was "calculated to mislead the jury and cause them to infer and find a verdict for plaintiffs upon facts and circumstances of rumor, general reputation, or repute in the community in which the parties lived, even when property rights are involved and when the relations of these parties began in illicit intercourse." We do not think the charge is erroneous for the reasons assigned. In 1 Andrews' Am. L. (2d ed.) §486, it is said: "Where the inception is illegal or illicit, the ordinary presumption of continuance applies until there is a change in the circumstances, but a very slight change will be seized hold of in order to presume the marriage." In *Smith* v. *Smith,* 84 *Ga.* 440 (11 S. E. 496, 8 L. R. A. 362), one of the parties was incompetent in law to enter into a marriage contract, and it was held that the marriage was void in its inception, but inasmuch as the parties continued to live together as husband and wife, after the disability was removed, the marriage became valid. The court in its charge in effect recognized the doctrine that cohabitation, illicit in its inception, would be presumed to continue

so; and in order to overcome the presumption, the burden was upon the party asserting the validity of the marriage to show affirmatively that the illicit relations had been terminated. The court did not go far enough, but should have charged that the burden was upon the party asserting the validity of the marriage, not only to show that the illegal relation had terminated, but that it had terminated by the parties entering into an affirmative agreement to become man and wife. This feature is possibly covered by other portions of the charge, but on another trial it should be clearly stated that the circumstances should be such as to show an affirmative agreement not only to discontinue the illicit cohabitation, but from thenceforward to become man and wife.

6. The court declined to charge according to a request submitted in writing by defendant's counsel. It contained among other things: "I charge you that marriage arises and exists in contract and it needs to be proved as other civil contracts, when property rights are involved and depended upon." The use of the words, "and it needs to be proved as other civil contracts," is rather indefinite, and tends to minimize the value of evidence of general repute and the effect of parties holding themselves out as husband and wife. The request contained the further proposition, that, "If, however, it should be shown that such relations had their origin in illicit intercourse, no such presumption arises, and to show that it was not continuous requires proof of actual marriage." The words, "proof of actual marriage," were inapt and calculated to confuse the jury. It was not erroneous to refuse to instruct the jury as requested, as the request contained matters which were objectionable for the reasons indicated.

*Judgment reversed. All the Justices concur, except Holden, J., who did not preside.*