28936. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *et al. v.* ARMSTRONG.

DECIDED JULY 9, 1941. REHEARING DENIED JULY 24, 1941.

*Neely, Marshall & Greene,* for plaintiffs in error.

*Miles W. Lewis,* contra.

FELTON, J. The plaintiff in error requested a hearing by the Industrial Board to determine which of three claimants was entitled to compensation on account of the death of an employee covered by the workmen's compensation act. Two of the claimants were eliminated by the board because of bigamous marriages with the employee. The other claimant, the defendant in error here, was held not to be entitled to compensation. On appeal to the superior court this award was reversed and compensation was awarded to the defendant in error. We are concerned here with the correctness of the judgment of the superior court in reversing the award of the Industrial Board.

At the hearing before the single director the claimant, Carrie Armstrong, alias Smith, testified: "My name is Carrie Armstrong. . . I live in Jersey City, New Jersey. I have lived there a little over a year. Prior to that I lived in Greene County. I lived in Siloam about five years. . . I went from Siloam to Jersey City. Before I lived in Siloam I lived in Hancock County where I was raised and born. I married Sidney Armstrong in Hancock County. . . I had never been married before. . . Sidney Armstrong had never been married before I married him. I don't know how long we lived together. He left me and come back and take me back, and go off and leave me again and come back. He said he was going to work. When we separated the last time he left me at my aunt's house. I was at Siloam then about five years off and on. He would always come where I was and I saw him all those five years I was over there. He stayed with me all night over there. I have a sister who lives in New Jersey. . . She sent for me. I just live with John Smith, I just stayed with him. We are living together; we ain't married." Q. "You live together as man and wife?" A. "Sometimes he stayed with me. I go by the name of Carrie Smith. I have been living with John Smith about three years in Jersey City and am still living with him except while I am down here. I live with him as his wife. I reckon you call that common law, still I ain't married to him. He does not exactly hold me out as his wife because he ain't married

to me. . . Sidney Armstrong lived down here in Milledgeville when he got killed. I passed by his home summer before last and stopped and talked with him. . . I have not lived with him since he left me at my aunt's. . . He left me because he said he was going and get a job. He never did come back. I gave him no reason to leave me; he said he was going to find work. I took up with John Smith when I lived in Siloam. . . He went to New Jersey six months before I did. . . I went up there in September of last year. I have been up there a little longer than a year. . . I went up there to stay with my sister. I live with John Smith now but I did not live with him when I first went there. I have never been married but once and that was to Sidney Armstrong. . . I have never been divorced. I was not going to marry again as long as he lived until I got a divorce. . . Sidney Armstrong married twice while I was living around here. I stayed about five years after we separated. . . I have asked him all the time why he did not come back to me. He told me to come back to him if I wanted to." There was evidence which authorized the director to find that there had never been a divorce between the claimant and the employee, and that the last two marriages of the employee were void and of no effect.

In the award the director found as a matter of fact that at the time of the death of the employee the claimant was his lawful wife, but that for some time she had not lived with or been supported by him; that their separation had been by mutual assent, and that consequently the claimant had voluntarily deserted and abandoned her husband, and therefore was not entitled to compensation. The director further found that the relationship of the claimant and John Smith became that of husband and wife at the death of the employee, and that this amounted to a remarriage, this remarriage extinguishing any right to compensation she might have had.

We think the judge of the superior court correctly held that at the time of the death of the employee Carrie Armstrong was his widow. It is clearly shown by the evidence that the last two marriages of the deceased were bigamous and void. And from the state of the record we think that Carrie Armstrong is still the widow of the employee, because in her testimony she stresses the fact that while she is living with John Smith she is not married to him and has never been married to him. Her intention in this matter is

that she shall not assume the role of wife to John Smith. Since this is true, the relationship between her and John Smith, illicit in its incipiency, continues to have that status. *Drawdy* v. *Hesters*, 130 *Ga.* 161 (60 S. E. 451, 15 L. R. A. (N. S.) 190); *Foster* v. *Foster*, 178 *Ga.* 791 (174 S. E. 532).

We next come to consider the question whether or not the separation of Carrie Armstrong and Sidney Armstrong was by mutual assent, and whether she voluntarily deserted and abandoned him. The evidence is that the deceased left the claimant to obtain work, promising to return. Since he did not actually return, and during his absence did not contribute to her support, but left it to her family and to her own resourcefulness to provide a livelihood, we can not agree that the separation was by mutual assent.

The answer as to whether or not there was a voluntary desertion on the part of the claimant is not so easily arrived at. The times, dates, places, and incidents upon which the answer to this question must be based are not shown with any degree of particularity by the record, and must be shown by the impression left by a consideration of the whole. We can get from the record the fact that claimant and deceased were married by a ceremonial marriage and lived together until it became necessary for him to go elsewhere to obtain employment. Claimant testified that deceased did not return to her and that soon thereafter she moved from the home of her aunt to Siloam, where she lived for five years. She testified that during a great part of these five years, just how long does not appear, she lived with John Smith. She also testified that she saw her husband during the entire five years, and that on occasion she spent the night with him. When and how many times this occurred does not appear, but the fact that she did resume the conjugal relationship with her husband would amount to a condonation of his previous desertion. She testified that during this period she was asking her husband on every occasion she saw him why he did not return to her, and that on one occasion he told her that if she so desired she could come back to him. Just when this offer was made with respect to her cohabitation with her husband is not shown, but it is reasonable to assume, and construing her testimony against her and in favor of the public policy of the State it must be assumed, that their subsequent cohabitation was a result of this offer. The fact then that she preferred the attentions and

·ministrations of John Smith would make the conclusion reasonable that she had voluntarily deserted her husband after a condonation of his past conduct. There was no fraud or undue influence shown by which she was induced to condone his conduct. We do not mean to hold that the mere offer to take her back would make her guilty of desertion in the event she did not go back to her husband, nor is that what is meant by the case of *Sims* v. *American Mutual Liability Ins. Co.*, 59 *Ga. App.* 170 (200 S. E. 164). We do hold that, under the facts and peculiar conduct of the parties in this case, the offer again to assume the marital relationship, together with the other evidence, must lead to the conclusion that there was a desertion of the husband on the part of the wife, and that thereby she lost her right to compensation.

The judge of the superior court erred in reversing the Industrial Board.

*Judgment reversed. Stephens, P. J., concurs. Sutton, J., dissents.*

SUTTON, J., dissenting. Sidney Armstrong, the deceased employee, and Carrie Armstrong, the claimant, were married in 1935 and lived together for about five years. He left his wife several times, but would come back and she spent one or more nights with him. The last time he went off he left her at her uncle's, stating that he was going in search of work, but he never returned to her. She heard that he had come back into the neighborhood and was at his mother's. She went by to speak to him, and he told her then that she could come back to him, but at that time he had entered into a bigamous marriage with one Lena Sanford, and the claimant told him "it would not be right" for them to live together then. The deceased employee had deserted the claimant and had stayed away from her for some five years, and in the meantime had entered into a bigamous marriage with another woman when he told the claimant that she could come back to him. In these circumstances the claimant was justified in not living with him, and when she failed to do so she was not guilty of wilful desertion. He had already deserted her. He later entered into another bigamous marriage with one Lillian Shivers. Both of the last two marriages were void, as he had never obtained a divorce from Carrie Armstrong. She was his legal wife at the time of the accident which caused his death, and under the Code, § 114-414, was con-

502

clusively presumed to be wholly dependent upon him for support. She had not voluntarily deserted or abandoned him; but under the evidence he had voluntarily deserted and abandoned her. Under the evidence in this case and the ruling of this court in *Sims* v. *American Mutual Liability Ins. Co.*, 59 *Ga. App.* 170 (supra), I think the judgment of the superior court reversing the award of the Industrial Board should be affirmed.