## PEACOCK *v.* PEACOCK.

No. 14534.   JUNE 11, 1943.   REHEARING DENIED JULY 9, 1943.

444

446

A. B. *Conger* and *Vance Custer,* for plaintiff in error.

H. B. *Spooner* and *J. C. Hale,* contra.

DUCKWORTH, Justice. Whether or not the court erred in rendering judgment for alimony and attorney's fees is to be determined by an answer to the question whether or not the evidence authorized a finding that the plaintiff and the defendant were husband and wife under a common-law marriage recognized in this State. See *Morgan* v. *Morgan,* 148 *Ga.* 625 (97 S. E. 675, 4 A. L.

R. 925) ; *Pennaman* v. *Pennaman,* 153 *Ga.* 647 (112 S. E. 829) ; *Foster* v. *Foster,* 178 *Ga.* 791 (2) (174 S. E. 532). The plaintiff in error contends that the evidence conclusively shows only a meretricious relationship between the parties. The defendant in error argues that, if a common-law marriage per verba de præsenti is not deducible from the evidence, certainly a marriage per verba de futuro cum copula might reasonably be found. A mere reading of the evidence demonstrates that at no time did the parties expressly agree that then and there the plaintiff took the defendant as her husband and that he took her as his wife. No ceremonial marriage was claimed. Throughout the testimony of the plaintiff, fully set out above, she made it clear that no marriage de præsenti was entered into. She met the defendant in May, 1940, when he was a married man. They "talked of marriage" in November, 1940. He proposed about the middle of December, 1940 ; "we did not set any definite time, but we were to get married in the future, . . but we did not set any special date. Until June, 1941, during which time she claims he had intercourse with her at various times, "we were still talking about getting married and making plans." When she returned to her home in Bainbridge because the defendant expected to take a position there, and after he came to her home on July 22, 1942, and she next saw him two or three weeks later and discussed with him her condition of pregnancy, he said "we would get married, but we could not get married around here, because our family thought we were already married, and that we would have to go out of town. . . I said we were engaged when we first had intercourse. I believed in good faith in our engagement at the time we had intercourse, believing in him, loving him, and believed he loved me." She informed her cousin, J. H. Steadham, and his wife, in Columbus that she and the defendant were married, but asked that for stated reasons the marriage be kept secret; and Steadham testified that a day or two before a seduction warrant was sworn out by her father she told him that she and the defendant were not married, and that the reason she "fooled them at Columbus" was that she expected the defendant to marry her. There was testimony that the defendant had been introduced to various persons as the husband of the plaintiff, and that he accepted such introductions without protest. All of this he denied, and he testified that he never agreed to become her husband at any time ;.

and it was not shown that he ever referred to her as his wife. But assuming that he acquiesced in such introductions and that the parties were regarded by numerous persons as being married, and that by her relatives he was welcomed and treated as her husband, such facts would not establish the *fact* of marriage or a consensus, but only be *evidential* of a previous agreement by which he and the plaintiff agreed to be husband and wife, or, as sometimes stated, the acts and conduct of the defendant would create only a presumption that they had entered into such an agreement by express words. See *Drawdy* v. *Hesters,* 130 *Ga.* 161 (3) (60 S. E. 451, 15 L. R. A. (N. S.) 190). The presumption or inference to be drawn from such conduct, however, is overcome and set at naught by the plain testimony of the plaintiff herself, conclusively showing that at no time did she regard herself as the wife of the defendant or that there was any agreement de præsenti by which they became husband and wife, but that at some time in the future they would assume such relationship. "To constitute a valid marriage per verba de præsenti there must be an agreement to become husband and wife immediately from the time when the mutual consent is given. An express future condition is absolutely fatal to a claim of marriage, and cannot be explained away by circumstances. It shows mental reservations which are incompatible with consent. This is true whether the condition relates to the creation of the marriage status, or to the duration of the relations of the parties. As there can be no contract per verba de præsenti where the marital status is to become fixed in the future, it is not sufficient to agree to present cohabitation and a future regular marriage when more convenient, or when a wife dies, or when a ceremony can be performed." 18 R. C. L. 392, § 13.

But, says the defendant in error, the evidence authorized a finding that a marriage per verba de futuro sum copula existed at the time of the filing of the application for alimony; and we are urged to recognize the doctrine of such common-law marriage as is referred to in *Askew* v. *Dupree,* 30 *Ga.* 173. In that case only a marriage per verba de præsenti was involved. In the opinion Judge Lumpkin, speaking for the court, said that he could do no better than to adopt as controlling an opinion written by the learned trial judge, which was set out in full in the opinion of this court, and in which opinion of the trial judge he recognized as valid marriages

at common law either one per verba de præsenti or one per verba in futuro cum copula, following which quotation Judge Lumpkin added: "The conclusions to be deduced from the whole matter are these: That marriage is founded in the law of nature, and is anterior to all human law; that in society it is a civil contract; that if the contract is per verba in præsenti—that is, I take you to be my wife, and I take you to be my husband—though it be not consummated by cohabitation, or if it be made per verba de futuro, and be consummated, it amounts to a valid marriage, in the absence of all municipal regulations to the contrary; and that notwithstanding there be statutes directing a license to issue, as in this State, and inflicting a penalty on any minister or magistrate who shall unite the parties in wedlock, without such license, yet, in the absence of any positive enactment declaring that all marriages not celebrated in the prescribed form shall be void, a marriage deliberately and intentionally entered into by the parties, who are able to contract according to the rules of the common law, without conforming to the enactment, is still a valid marriage." Obviously what was said in respect of a common-law marriage per verba de futuro cum copula in a case where only a marriage per verba de præsenti was under consideration was obiter dicta, and is not binding upon this court. Whether or not such a marriage is valid under the common law of this State has never been presented for decision. In *Lefkoff* v. *Sicro, 189 Ga.* 554, 561 (6 S. E. 2d, 687, 133 A. L. R. 738), quoting from the *Askew* case, supra, that "Marriage, being a contract, is of course consensual, for it is of the essence of all contracts to be constituted by the consent of both parties" and that "Marriage being a civil contract, it is not necessary that it be solemnized by a person in holy orders, and *in facie ecclesiæ*," this court continued the quotation from the *Askew* case by incorporating the language with respect to a marriage per verba de futuro cum copula (in words of the future tense), following which it cited and discussed two old English cases, together with citations to several textwriters of note, but proceeded to dispose of only the question whether or not the trial court, in a case where a marriage de præsenti was claimed, erred in charging the jury that there could be no common-law marriage if either or both of the parties concealed from the public generally such claimed relation of husband and wife. That decision constitutes no authority on the question now

under discussion; and what, if any, recognition was given to the validity of a common-law marriage de futuro cum copula must be treated as obiter dicta.

Not only does it not appear that the doctrine, if existing at common law, has not been declared in this State, but it is asserted by respectable authority that the idea that it ever existed in England was due to misconceptions of those who announced the fact. In Duncan *v.* Duncan, 10 Ohio St. 181, 183, decided in 1859, it was said: "The idea that a contract for a future marriage, followed by cohabitation as husband and wife, is itself a valid marriage at common law seems to have obtained currency on the credit of remarks made by several elementary writers of distinguished learning and ability, and by certain judges of high character, speaking by way of *obiter dicta,* in cases in which this question was really in no way involved. But the better opinion now seems to be that these remarks are unsupported by any case actually adjudicated and entitled to be considered as authoritative; and the mistaken doctrine seems to have originated either in the inadvertent confounding of what might, in the absence of rebutting evidence, be good presumptive evidence of a marriage, with marriage itself, or from the fact that such a contract *per verba de futuro,* followed by cohabitation, was one of which the canon law, as administered by ecclesiastical courts in England, until restrained by statute, would enforce the specific performance." Time does not seem to have brought about any general acceptance of the doctrine. In 35 Am. Jur. 210, § 42, it is stated: "It has been said that the canon and common law recognize marriages per verba de futuro cum copula or, in other words, marriages through carnal intercourse after an agreement to be married in the future, the law presuming a present consent from such agreement and intercourse; and such marriages have to a certain extent been recognized in American cases. But the view has been taken that such presumption may be overcome by facts showing that the parties did not intend at the time of the intercourse to enter into the marriage relation. It has been ruled that marriage is merely evidenced, and not constituted, by this form of contract; and the prevailing rule in this country is, that, despite a previous agreement to marry, there must be an actual present agreement to be married and that without such an actual present agreement no marriage results from intercourse. . . Indeed, in some juris-

dictions the doctrine has been rejected in toto, and it seems to be a shadow of its former self even in the jurisdictions that have not expressly repudiated it as a whole; it has been observed that it is a fair conclusion that the doctrine is nearly, if not quite, obsolete." In 38 C. J. 1319, § 94, it is stated: "With regard to common-law marriages effected by the express agreement of the parties, a distinction is made between contracts per verba de præsenti, that is, where the parties take each other in the present tense, implying that the marital relation is constituted immediately, and contracts per verba de futuro, which imply no more than that the parties will marry each other at a later time. Contracts of the former sort, when duly acted upon, create a valid marriage, while words evidencing only the intention to be married in futuro are ineffectual even where followed by cohabitation. It has been sometimes said, however, that a contract per verba de futuro cum copula is a valid marriage, provided that the copula is a fulfillment of the marriage promise. But under the better rule, words showing only an intention to contract in marriage in futuro will be ineffectual to establish the requisite consent in any event; and unless they are followed by a new promise express or implied in præsenti, the copulation of the parties is meretricous."

In *Hornsby* v. *Smith,* 191 *Ga.* 491, 496 (13 S. E. 2d, 20, 133 A. L. R. 684), it was recognized that "By an act of the General Assembly approved February 25, 1784 (Cobb's Dig. 721), the common law of England was made the law of this State. . . Section 1 of that act made all laws that were of force in the State on May 14, 1776, including the common law, so far as they were not contrary to the constitution, laws, and form of government now established in this State, of full force and effect upon the passage of that act." It was pointed out that in *Turner* v. *Thompson, 58 Ga.* 268 (24 Am. R. 497), this court, after recognizing that at common law the right to an easement of light and air passing over another's land through ancient windows may be acquired by use for twenty years, observed that most of the American courts had repudiated this common-law doctrine as being wholly inapplicable, because it was not suited to a young and growing country; and in the *Hornsby* case it was said: "Thus the Georgia case mentioned is authority for holding that common-law rules unsuited to the conditions in this State are not of force here and were not made so by the act of 1784.

And we think the common-law rule on this subject is not the law of this State." We have no hesitancy in holding that a common-law marriage per verba de futuro cum copula is abhorrent to the conditions of life and customs in this State, as well as the public policy of this State as disclosed in the Code, §§ 26-5801, 26-6001, 53-101, and is not of force here. What was said in Duncan *v.* Duncan, supra, rejecting the doctrine under consideration, is still more pertinent now: "Finding ourselves, then, compelled by no preponderating force of authority to the adoption of a doctrine so loose as that which would be necessary to sustain the marriage claimed to exist in this case, we are unwilling to do so. It seems to us that grave considerations of public policy forbid it; that it would be alien to the customs and ideas of our people, and would shock their sense of propriety and decency. That it would tend to weaken the public estimate of the sanctity of the marriage relation; to obscure the certainty of the rights of inheritance; would be opening a door to false pretenses of marriage, and to the imposition upon estates of supposititious heirs; and would place honest, God-ordained matrimony and mere meretricious cohabitations too nearly on a level with each other."

The evidence demanded a finding that the plaintiff had not entered into a common-law marriage de præsenti with the' defendant, which is a valid married status in this State; and there being in this State no common-law marriage de futuro cum copula, the court erred in allowing alimony and attorney's fees on either theory of the alleged common-law marriage between the parties.

*Judgment reversed. All the Justices concur.*