WHITE, Judge.
The Board of Trustees of the Firemen’s Relief and Pension Fund of Sanford, Florida, appeals a final judgment and peremptory writ of mandamus requiring the said Board to pay widow’s survival benefits of $175.42 per month beginning as of November 27, 1957 to the petitioner-appellee Elizabeth Joan Daffron whom the trial court found to be the surviving common law wife of Hubert R. Daffron, a deceased fireman of the City of Sanford. Hubert Daffron died October 27, 1957 as a result of injuries sustained in line of duty within three months after his employment.
The respondent trustees took the position that the petitioner was not the widow of Hubert Daffron and for that reason, among others, was not eligible to participate in the pension fund. The trustees refused to pay the claimed benefits and now insist, on appeal, that Elizabeth Daf-fron did not establish by sufficient evidence in the trial court that she was legally the wife of Hubert Daffron. There is no doubt that such benefits are limited to legitimate widows, whether through regular ceremonial marriage or by common law marriage, and the sufficiency of the evidence' on this issue is a crucial question properly presented on appeal.
The petitioner, then known as Elizabeth Joan Solomon, began cohabiting with Hubert Daffron in August of 1953 at which time she knew he was married. She previously had an affair with one David Solomon and became pregnant. She consequently married David Solomon and gave birth to a daughter named Sheila Jo Solomon. She testified that her marriage to David Solomon was terminated by divorce in June of 1953 shortly before she began living with Hubert Daffron; that Hubert Daffron obtained his divorce on October 9, 1954 and that on October 10, 1954 she and Hubert Daffron agreed, without license, ceremony, witnesses or writing, that they were married. In late 1954 she gave birth to a son named Kevin who was ostensibly the child of Hubert Daffron, but no certificate of birth appears in the record. The foregoing occurrences took place in Indiana.
Elizabeth and Hubert Daffron moved to Florida and, according to her testimony, continued living together “as man and wife” until his death on October 27, 1957. She testified that after Hubert Daffron’s death *524 she returned to Indiana to reside and had an illicit affair with one George Berger by whom she had a child, but that she has remained unmarried since Hubert Daffron’s death. Other testimony before the trial court will be noted hereafter.
The record on appeal is both revealing and concealing. It contains no documentation of the testimony concerning the divorces of the parties from their respective spouses preceding their alleged common law marriage. There is no authenticated copy of a decree evidencing Hubert Daf-fron’s divorce, nor is there any such evidence of Elizabeth’s divorce from David Solomon which she testified was obtained in June of 1953. The record strongly suggests that Elizabeth Daffron had a propensity for acquiring status without benefit of clergy and changing status without benefit of record.
Other testimony on behalf of Elizabeth Daffron was offered by attorney J. F. Arnold of Anderson, Indiana. He stated that in 1954 he became acquainted with Hubert Daffron whom he represented as plaintiff in a suit for divorce from his then wife; that the divorce became final on October 9, 1954. We here reaffirm that there was no tender of an authenticated copy of a decree evidencing the divorce in question. Attorney Arnold testified that immediately after the divorce he was consulted by Elizabeth and Hubert Daffron concerning a common law marriage and that he explained what constituted a common law marriage; that they informed him they had been living together as husband and wife and did not wish to have a marriage license published in the newspaper due to the fact that she was pregnant.
The next time attorney Arnold saw Elizabeth and Hubert Daffron, according to his testimony, was when they came to his office in January of 1956 with reference to the adoption by Hubert Daffron of Sheila Jo Solomon, daughter of Elizabeth Daffron and David Solomon. The witness stated that he prepared a petition for adoption and obtained the consent of David Solomon and that a final decree of adoption was entered in the Probate Court of Preble County, Ohio. Copies of the petition and decree of adoption apparently were offered and received in evidence as Petitioner’s Exhibits 1 and 2, but the record does not contain such exhibits.
Attorney Arnold testified further that early in 1958, after the death of Hubert Daffron, Elizabeth Daffron consulted him concerning a claim against the City of Sanford, and that he prepared a petition for a declaratory decree in the Superior Court of Madison County, Indiana, to establish a common law marriage between Elizabeth and Hubert Daffron; that a hearing was held thereon and an affirmative decree was entered. This petition and decree apparently were offered and received in evidence as Petitioner’s Exhibits 3 and 4, but the record does not contain such exhibits.
Attorney Arnold testified finally that on December 24, 1958 he went to New Castle, Indiana, to the Henry County Hospital with reference to the birth of a child to Hubert Daffron; that he found the original entry slip which was made out at the time Elizabeth Daffron was in the hospital in October 1954; that he made a photostatic copy of the entry slip and notarized a statement of the custodian that it was a true copy of the original. The said copy appears to have been offered and marked “for identification only” as Petitioner’s Exhibit 5. The record on appeal does not contain such copy.
Another witness for Elizabeth Daffron was Joseph Daffron, brother of the deceased Hubert Daffron, who testified that Hubert and Elizabeth conducted themselves as man and wife between October, 1954 and some time in 1956, during which period the witness saw them from time to time, and that the girl Sheila called Hubert Daffron “Daddy”. This testimony, together with that of Elizabeth Daffron and attorney Arnold, provided the bases upon which the trial court concluded that a valid *525 common law marriage existed between Hubert Daffron and Elizabeth Daffron on October 27,, 1957.
In Maliska v. Dion, Fla. 1952, 62 So.2d 4, the plaintiff claimed to be the decedent’s common law wife. The relationship between the plaintiff and the decedent was meretricious in its inception, and inasmuch as the plaintiff failed to show that the decedent had obtained a valid divorce it was - held that she failed to establish a common law marriage with the decedent. The Supreme Court of Florida said on page 5 of 62 So.2d:
“We think there was abundant reason to invoke the rule announced in McClish v. Rankin, 153 Fla. 324, 14 So.2d 714, 717, that a sexual relationship incepted in meretriciousness will be presumed to continue in that state and when cohabitation begins while the man is ineligible to marry the duty falls on the woman to ‘show the metamorphosis from concubinage to marriage.’ This rule governs here instead of the one that of two marriages the later will be presumed valid.” (Emphasis added.)
In McClish v. Rankin, 1943, 153 Fla. 324, 14 So.2d 714, 717, the Supreme Court of Florida, speaking through Justice Elwyn Thomas, pointed out the historical reasons for the recognition of the common law marriage and suggested that the same conditions do not exist now as formerly to justify its continued recognition. Although not presuming to usurp the legislative prerogative and abolish common law marriage by judicial fiat,, the court indicated that henceforth evidence concerning the determination of common law marriages would be examined “with increasing caution for as the reasons for making informally a contract of such moment become more obscure so should the efforts to establish it grow more difficult. This seems harmonious with the trend of late decisions and modern thought toward the abolition of consensual marriage.”
The doctrine of the quoted decisions reflects our view of the evidentiary rule to be applied in the present case, viz., that in an action to establish a common law marriage growing out of a mutually known illicit relationship, where the plaintiff previously had been married and knew of the preexisting marriage of the other party, the plaintiff has the burden of proving by competent and convincing evidence the dissolution of the previous marriages of both parties prior to the date of the alleged common law marriage. This case, in true perspective, is not one in which a marriage is being attacked. It is a case in which a common law marriage is sought to be established as a condition precedent to a claim of right; and in view of the related history of the parties, there is no aider by presumption. See Porter v. La Fe, Fla.1953, 68 So.2d 602; Luther v. Luther, W.Va.App.1938, 195 S.E. 594; In re Foley’s Estate, Colo.1924, 230 P. 618; Drawdy v. Hesters, 1908, 130 Ga. 161,, 60 S.E. 451, 15 L.R.A.,N.S., 190; 35 Am.Jur. Marriage, Sections 203, 205, 230.
The burden was upon Elizabeth Daffron to prove the removal of the impediments to her alleged marriage to Hubert Daffron. These impediments were the previous marriages of the parties which, in the circumstances, are presumed to continue until proved to have been terminated by death or divorce. The best evidence of such occurrences are, of course, the public records. We think the able and sympathetic trial court gave too much effect to undocumented testimony and to the general rule of prima facie presumption favoring the marriage status. In so doing he tended to minimize the correlative rule that such presumption does not hold in a suit by either party to the alleged compact when it appears that the relationship originated in conscious meretriciousness.
We are mindful of the “post mor-tem” Indiana decree purporting to be a declaration of common law marriage between Elizabeth Daffron and the deceased *526 Hubert Daffron. Such decree may be valid in Indiana and not wholly ineffectual for all purposes. With respect to this litigation, however, the question of the marriage of Elizabeth and Hubert Daffron must be determined in the Florida jurisdiction where the parties were domiciled on October 27, 1957 and where the alleged rights of the petitioner arose. The Indiana decree, therefore, is held not entitled to full faith and credit on the marriage question here involved. See 12 Am. Jur., Constitutional Law, Sections 707, 708.
Although this cause must be reversed for a new trial on the question of the petitioner’s marriage, we shall indicate the extent of her rights in the event a valid marriage should be established. The firemen’s pension system of Sanford was created by two Acts, and Elizabeth Daf-fron has claimed under both Acts. She seeks $100 per month under Florida Statutes, Chapter 175, F.S.A., a 1939 general law, and $188.55 per month under Chapter 57-1819, Laws of Florida, Special Acts of 1957, or a total of $288.55 per month from November 27, 1957. The trial court allowed $100 monthly under the prior Act and $75.42 monthly under the later Act, or a total of $175.42 from November 27, 1957.
The appellant trustees contend that the 1957 Act merged and superseded the 1939 Act and that Elizabeth Daffron could not receive benefits under the earlier Act. They further contend that Elizabeth Daffron was precluded from benefits under the 1957 Act because Hubert Daffron had not served long enough to qualify for a disability pension in the event he had survived his injuries; that therefore there could be no derivative benefits to his wife consequent upon his death.
If Elizabeth Daffron is ultimately adjudged to be the surviving wife of Hubert Daffron she would, in our opinion, be entitled to $100 per month under the provisions of Section 175.13 F.S.A., which are unequivocal and without reference to tenure of service. In fact, if the two Acts are held severable it is conceded by the trustees that Hubert Daffron’s legitimate widow would be so entitled. The 1957 Act, however, presents a more serious question, and we think the answer lies in the proper construction of Section 14(2) in the light of Section 13 of said Act.
Section 13 relates to a fireman’s benefits consequent upon his total disability. These are graded benefits according to tenure, but no fireman may receive disability benefits unless he has served a minimum of five years. The applicable portion of Section 14(2) reads as follows:
“The widow of such fireman shall be paid monthly three-quarters ()4) °f the amount which the deceased member would have received; provided such widow remains unmarried. * * ” (Emphasis added.)
It is therefore necessary to determine the amount the deceased fireman “would have received” in order to determine the entitlement of his widow in consequence of his death.
Hubert Daffron had been employed as fireman less than three months. If he had survived and been totally disabled, he would not have served the minimum of five years necessary to qualify for a pension. We are of the opinion that a reasonable and logical interpretation of the 1957 Act makes the right of a widow to survival benefits dependent upon her husband’s having a tenure of service sufficient to qualify him for benefits in the event of his disability. We conclude, therefore, that Elizabeth Daffron, as surviving wife of Hubert Daffron, would be entitled to $100 per month under Florida Statutes, Chapter 175, F.S.A., but nothing under Chapter 57-1819, Laws of Florida, Special Acts of 1957.
We agree with the trial court that the City of Sanford, in effect, caused two firemen’s pension systems to be established; *527 that although bookkeeping and administrative functions were consolidated under the 1957 Act, a contextual construction of the two Acts discloses no clear intent to embrace within the later Act all the provisions with reference to benefits. An intended severability in this respect is further indicated by the continued collection from firemen of percentages of their salaries under both Acts.
The judgment appealed is reversed, the peremptory writ of mandamus is discharged, and a new trial is ordered in conformity with the views and holdings herein set forth.
Reversed with directions.
ALLEN and KANNER, JJ., concur.