# Kirk *versus* Carr.

1. A will ordered land to be sold without designating any one to execute the power:—the executors may maintain ejectment for it without authority from the Orphans' Court.

2. It is only the powers contained *in* the will which are to be executed under the Orphans' Court, not those necessary to the execution of the power and not in the will.

3. The 12th and 13th sections of the Act of February 24th 1834, construed.

4. A will signed by another for the testatrix was admitted to probate by the register on the usual proof by the subscribing witnesses, and was afterwards sustained on an issue in the Common Pleas. In ejectment one of the witnesses said he did *not recollect* that the testatrix requested her name to be signed by another, &c. *Held*, that this negative testimony could not overturn the positive grounds arising from the probate.

5. Want of memory will no more destroy the attestation than insanity or death.

6. The attesting signature attests that everything was rightly done unless the act attested be positively impeached.

February 12th 1867. Before WOODWARD, C. J., THOMPSON, STRONG and READ, JJ. AGNEW, J., at Nisi Prius.

[Kirk *v.* Carr.]

Certificate from Nisi Prius, where it was an action of ejectment by George Kirk, surviving executor, &c., of Rachel Dougherty, deceased, against Samuel Carr and others, for seven-twelfths of a lot of ground in Philadelphia.

The premises had belonged to the testatrix.

Her will had been contested, and on a trial in a feigned issue on appeal from the register, had been sustained.

The defendants had in a former action of ejectment recovered the land as seven of the heirs at law of the testatrix.

The will, amongst others, contained this clause: "I will that my real estate be and remain as it now is for one year after my death; when it must be sold: the proceeds of which to be divided among the children of my sister Rose Anna Kirk, as before named: that is, Esther, John, George, Benjamin, Mary Ann, Simpson and Rachel, share and share alike, with the exception of one hundred dollars, which I bequeath to my sister Mary, to be paid to her from time to time as she may most need."

Ezekiel Norman and George Kirk were named executors. The will was signed "Ezekiel Norman, for Rachel Dougherty, at her request." The witnesses were Mary Ann Norman and Lewis Rodman.

The plaintiff claimed possession of the land as executor directed by the will to sell.

On the trial, Mary Ann Norman, one of the witnesses, testified that the testatrix told Norman to sign the will for her, that he signed it at her request and that both witness and testatrix saw him sign it; that the other witness signed it at the request of the testatrix. Lewis Rodman, the other witness, was called by the plaintiff, and testified:—

"That is my signature; I have some recollection of the occurrence; I was asked by Mr. Norman to witness her will; I don't recollect seeing Mr. Norman sign the will; I would hardly have put my name there unless I had seen it signed." On cross-examination: "I do not recollect her asking him to sign for her; I cannot say whether it was signed in my presence; I've but little recollection about the whole thing; to the best of my recollection, I did not see him sign it; I presume it was signed when handed to me or before it was produced there; I have no distinct recollection of her saying anything about the will.

"An affidavit was handed to me by the register; I did not examine it critically, but I supposed it was in the usual form; the register asked me no questions, but put a paper before me to be signed, in the routine of the business.

"I have no recollection of her asking any one to sign the will; my recollection of the scene is tolerably distinct; I don't recollect her making any request about paper; if it had occurred, I think I should have recollected it.

[Kirk v. Carr.]

" I supposed the paper I signed at the register's was the ordinary affidavit; it was read to me. I may be allowed to explain: I said, in that affidavit, that I saw the will signed; if my attention had been called to it, I should not have said so; my attention was first called to this mistake during some of the trials.

" I asked her if she knew what she was doing, and she said ' Yes.' "

The plaintiff also gave in evidence, under objection and exception, the will and probate before the register, and the record of the feigned issue sustaining the will.

The defendant submitted the following points:—

1. That the plaintiff must satisfy the jury by two witnesses of each fact necessary to the support of the will. That when he abandons the prima facies of the probate, and himself calls the two witnesses, if one of them fails, then he has not made out his case, and, as here, Dr. Rodman, one of the two witnesses, testifies that according to his recollection and belief he did not hear any request or see Norman sign, the jury must find for defendant.

2. That the plaintiff before recovery must show in himself a valid existing title, and that in this case there is no evidence of title in him as executor or otherwise. That the direction in the will of testatrix that the premises in dispute " must be sold," vests no title or right of possession in an executor not mentioned in that clause and whose name and office are not connected with the power or duty of selling.

The judge charged the jury in answer to defendant's 1st point:—

" The first part of this point I affirm as far as it affirms that plaintiff must satisfy the jury by two witnesses of every fact necessary to the support of the will. The remainder of this point I refuse to affirm."

In answer to the defendant's 2d point:—

" This point is denied, except that the plaintiff must show a valid existing title."

" 1. George Kirk, as surviving executor, has a right to bring this suit if the will be a valid will.

" 2. I leave to the jury the question whether there has been enough shown in this case to overturn the prima facies of the probate as to the facts of signing by Ezekiel Norman for her and the request of the testatrix that he should do so.

" 3. I instruct the jury that to overcome the prima facies of the probate and attestation, Dr. Rodman's testimony must have been positive to the effect that he did not see the will signed or hear any request from Mrs. Dougherty to Mr. Norman to sign it. The mere recollection and belief that there was no request to sign the will are not sufficient."

. [Kirk *v.* Carr.]

There was a verdict for the plaintiff, and the defendants assigned for error the admission of the will in evidence and the charge of the court.

*T. H. Speakman* and *E. S. Miller*, for plaintiffs in error, cited Act of February 24th 1834, §§ 12, 13, Purd. 282, pl. 61, 62, Pamph. L. 75; Boshart *v.* Evans, 5 Whart. 561; Wms. on Ex'rs. 580; Haus *v.* Palmer, 9 Harris 300; Shinn *v.* Holmes, 1 Casey 144; Holliday *v.* Ward, 7 Harris 490; Jayne *v.* Price, 5 Taunt. 326.

*C. Guillou*, for defendants in error.

The opinion of the court was delivered, March 4th 1867, by

THOMPSON, J.—The 12th and 13th sections of the Act of 24th February 1834, relating to executors and administrators, were compiled or copied from the 1st section of the Act of 12th of March 1800. That act provided for sales to be made by executors under a naked authority in a will, and also when a sale was directed without any designation by whom or by what authority. Following this declaration of power to the executors, they are by the act authorized to institute actions for the recovery of the possession of the land directed to be sold, and actions for trespasses committed thereon. Their title to sue was thus declared to be ample. The revisers of the civil code, in their report on these sections, speak of no alterations intended by them in the law, but the qualification added in the 12th section, that the powers contained in any will where there was merely a direction to sell, without designating the person or persons by whom it should be executed, was to be exercised under the authority of the Orphans' Court. This was the only change proposed by them to be made in the law. They must have intended, therefore, that the executors should, as theretofore, be possessed of full authority to maintain ejectments for the land which they were authorized to sell. In fact, they could not effectually exercise the power without this right. They could not sell what they could not control and deliver the possession of, at least not without sacrificing it. That the executor might maintain an action is not denied by the plaintiff in error; but it is contended that it could only be done under the authority of the Orphans' Court. That is a clear mistake of the meaning of the law. It is only the powers contained *in* the will which are to be executed under the authority of the Orphans' Court, not those necessary to the execution of the power, and not in the will, such as bringing suit. This will says nothing about that, and therefore it is left to the executor as part of his duty preparatory to executing the power under the authority of the court. We think the right of the executor to maintain the eject-

[Kirk v. Carr.]

ment in this case was conferred by the 13th section, which ought to be construed and taken as applicable to the case of a sale under the circumstances mentioned in the 12th section; that was undoubtedly intended. If not, the provision of the Act of 1800 in this particular was not respected. But it is not necessary to insist on this. We think both classes of cases stand in the same mischief, namely, the necessity for authority in the executor to maintain suit, and the remedy provided must have been intended for both, the language not excluding either. The charge was correct, therefore, in holding that the executor could bring suit for the recovery of the property, if the will under which he acted was valid.

The second question in the order of the discussion at bar was, whether the prima facies of the validity of the will of Rachel Dougherty which has been admitted to probate by the register, was overcome by the proof at the trial. Instead of relying on the probate, and giving the will thus proved in evidence, and waiting until it was assailed by the other side, the plaintiff produced the subscribing witnesses to show its execution, independently of the probate. One of them testified to all that was necessary to establish it as a valid will; the other could not recollect a material element in the execution, viz.; whether the testator had requested a by-stander, Ezekiel Norman, to sign her name to it for her. He recognised his own signature to it as a witness, but the circumstance attending the placing the testator's name to it by another he could not recall.

Failing, therefore, to prove the execution *a priori*, the plaintiff was compelled to fall back on the probate in the register's office, and offered the will as primâ facie established by that, and it was received under objection. The plaintiff was not to be regarded as having abandoned that as a mode of getting the will before the jury, because he had failed in another, especially as it did not deprive the other side of any right of giving testimony to assail it. The court was right in treating the objection to this course as one regarding the order of testimony merely, and within its discretion.

This being the situation of the case, the defendants were obliged to assume the offensive, and attack the prima facies of the will under the probate, and for this relied mainly on the testimony of Dr. Rodman already in to overthrow it. It was in regard to his testimony that the material error in the charge is alleged to exist. We quote it:—

· The learned judge said: " Secondly, I leave to the jury the question whether there has been enough shown on this case to overturn the prima facies of the probate as to the facts of signing by Ezekiel Norman for her; and at the request of the testatrix that he should do so."

4 P. F. Smith—19  .

[Kirk *v.* Carr.]

" Thirdly. I instruct the jury that to overcome the prima facies of the probate and attestation, Dr. Rodman's testimony must have been positive to the effect that he did not see the will signed or hear any request from Mrs. Dougherty to Mr. Norman to sign it. The mere recollection and belief that there was no request to sign the will are not sufficient."

In the first of these paragraphs the whole testimony was referred to the jury to ascertain whether it was sufficient to overturn the probate or not, without any special instructions as to how it was to be looked at and considered by them. The second was designed to instruct them as to the consideration to be given to mere negative testimony, and this was expressly in reference to the testimony of Dr. Rodman, a subscribing witness. In his testimony in chief he said, " I do not recollect seeing Mr. Norman sign the will; I would hardly have put my name there unless I had seen it signed." On cross-examination he said, " I do not recollect her (the testatrix) asking him (Norman) to sign for her. I cannot say whether it was signed in my presence. I have but little recollection about the whole thing, to the best of my recollection I did not see him sign it." As to his affidavit before the register, in which he testified to the signature being in his presence and at the request of the testatrix, he said, " If my attention had been called to it, I should not have said so; my attention was first called to the mistake during some of the trials."

It is evident that it was with regard to this testimony that the second paragraph of the charge referred. Almost the whole of it was mere negative testimony from want of memory, and could on no principle be allowed to overturn that which stood on positive grounds; it was therefore entirely proper to instruct the jury as to the effect of such testimony. Want of memory will no more destroy the attestation than insanity, absence or death : 5 Harris 60, 6 Casey 218, and 14 Wright 354. Memory can no more be kept alive than the body, and hence the law allows the attesting signature to speak when the tongue may be silent; and it attests that everything was rightly done unless the act attested be impeached, not negatively merely, but positively. Negative and positive are the opposites and contrasts of each other. It was obviously in this sense that the expression was used. The contest was before the judge, the will primâ facie established, and proof of a negative character to assail it. He said of the latter in substance, its negative character cannot avail as against the will as proved; the testimony must be *positive* to have that effect. To suppose that the jury, under the circumstances, understood the expression to mean that the witness must have sworn positively to the fact that there was no signing at the request of the testatrix, is to attribute a greater obtuseness of intellect to them than I am

[Kirk *v.* Carr.]

willing to do. So far as the testimony was of a negative character the instruction was proper. That the form of expression may not have been the best that could have been chosen we realize in the presence here of this writ of error, but we do not think it could have misled the jury. In Rees's Adm'rs. *v.* Stille, 2 Wright 138, the charge of the judge below was as follows: " Proof that the testator was imposed on lies on the defendant, and he must make out the absence of a sound mind by positive proof." The expression was not thought assignable as error by the able counsel in that case. It is a form of expression very frequently used, and we see no cause for reversing the judgment on the account of its application to the proof referred to in this case.

There being nothing to correct in this case,

The judgment is affirmed.