## 32239. JONES *v.* CANNADY.

454

Decided January 14, 1949.

*Gertrude Harris, S. T. Allen, John H. Hudson, Robert B. Blackburn,* for plaintiff in error.

*Walter A. Sims, Joseph S. Crespi,* contra.

SUTTON, C. J.  Veronia Cannady made application to the Court of Ordinary of Fulton County for administration on the estate of Gertrude King, deceased, and in her amended application she alleged that she was a niece of the deceased and had been selected in writing by the next of kin of said deceased to be appointed administratrix.  In a caveat to the application Bill Jones alleged that the deceased was not Gertrude King, but was his wife, Gertrude Jones, and that he was the sole heir at law and had been appointed and qualified as temporary administrator.  After a hearing the ordinary appointed Frampton Ellis, County Administrator of Fulton County, as permanent administrator of the estate.  The caveator appealed to the Superior Court of Fulton County.

The case was tried before a jury in the superior court and Veronia Cannady testified:  Deceased was her aunt and died on April 3, 1947.  Next of kin were her mother, two brothers, and several nieces and nephews.  The mother and brothers of the deceased selected the witness to be the administratrix of the estate.  Deceased was the widow of Jim King, had no children,

and was not married to anyone at the time of her death. Witness was reared in Atlanta but for some years had lived in other cities. She visited in Atlanta in 1941, 1944, 1945, and 1946, and while in Atlanta stayed with the deceased and the mother of the deceased. She had seen Bill Jones around the home of the deceased, and in 1941 he had a room upstairs in her house at 277 Forrest Avenue. Deceased was living downstairs. During the past four years he had not lived in the house but sometimes came into the back yard in a car. She had never seen' him take a meal at the deceased's house, and had never seen deceased go riding or shopping with him.

Bill Jones, the caveator, testified: He married deceased in November, 1942. At that time she was living at 277 Forrest Avenue in Atlanta and he lived with her. Bill O'Neal, Napoleon Thomas, Alberta Fortson, and a white man named McKinsey were present at the time he and the deceased married. When she died in April, 1947, he had a hotel on Decatur Street and was living there. He lived in the home of the deceased on Forrest Avenue in 1940 and 1941 and moved away in 1945. She would come over to the hotel on Decatur Street and when she spent the night there she slept with him. He testified in the court of ordinary that he lived with her eight years. Another wife, Maggie Petty, was living when he went to live with Gertrude and this wife died in 1941 and he became the common-law husband of Gertrude King after that, around November, 1942. Witness identified his signature on a bill of sale indicating he sold Mrs. Gertrude King a diamond ring. (In the list of documentary evidence there is a bill of sale listed, dated March 22, 1943, for a diamond ring, parties to the transaction shown as Bill Jones and Mrs. Gertrude King.) He identified his signature on other writings wherein deceased was referred to as Mrs. Gertrude King subsequent to his alleged marriage to her. While he lived at Forrest Avenue he had a room upstairs and deceased lived downstairs. There were other roomers, but this was just a fake, as they sold liquor and rented rooms to transients. All the bills were in her name. She was a member of Turner Monumental Methodist Church and a worker in the church, but he tried to keep her from going to church. Business licenses, an automobile, membership in the Y. W. C. A. and Atlanta Branch

N. A. A. C. P., taxes, and the deed to her home were in her name as Gertrude King.

Henry Tracy testified: He knew Bill Jones and in 1940 he met a person whom he understood was Gertrude, his wife. They had come into J. C. Collins's back yard on Forrest Avenue when the property was first zoned for colored people. Bill Jones had wanted to see J. C. Collins, and witness called Collins. Bill Jones introduced himself to Collins and introduced the person with him as Gertrude, his wife. They wanted to buy the house next door. Later he saw Bill Jones and Gertrude around the place next door, and when he left Atlanta in June, 1942, Bill and Gertrude were there. He identified J. C. Collins's signature on a bill made out to Mrs. King for a 1938 Buick, and on another bill for a fuel pump exchange. In October, 1945, when he returned to Atlanta he first saw Gertrude at the house on Forrest Avenue and later saw Bill. The first time he saw Gertrude he asked where Bill was and she said "Oh, my old man is around somewhere."

William O'Neal testified: He knew a woman by the name of Gertrude King. She became Gertrude Jones in November, 1940, by marrying Bill Jones. Later he changed this date to November, 1942. They married by "jumping over the broom." She had a party one night, and she and another woman named Alberta, a man called Bear, one named Paul Jones, and another were there. Everyone present was colored except a white man named McKinsey. Everybody drank whisky but Bill Jones. Gertrude drew a chair and Bill drew a chair; they put a broom over the chairs; she jumped over the broom one way and Bill jumped over it the other way; and that was the way they declared their marriage. This took place at 277 Forrest Avenue. He saw them after that, and Gertrude always introduced herself as Bill Jones's wife. Later on he worked at Mauldin's Furniture Company and Gertrude bought furniture there as Mrs. Bill Jones. After that he did some general housework for Gertrude and collected his pay from Bill Jones.

J. C. Collins testified: He lived next door to 277 Forrest Avenue and knew Gertrude as Gertrude King and as Gertrude Jones, wife of Bill Jones. When he first became acquainted with them, the latter part of 1939, or in 1940, they made themselves

known to him as husband and wife. They wanted to buy the place next door to where he lived on Forrest Avenue and later bought it. From time to time since then he had transactions with Bill and Gertrude. When he did work for Gertrude she asked him to make the bill to Gertrude King, and he never asked why. For a year or more before Gertrude died Bill was not around the place on Forrest Avenue as much as previously. The only thing that ever happened to cause him to think they were not husband and wife was the number of people who came and asked where Gertrude King lived. Bill Jones was living there at the time.

Alberta Fortson testified: She knew Bill Jones and a woman named Gertrude King or Gertrude Jones. She knew her for ten or twelve years, first on Edgewood Avenue and later on Forrest Avenue. She was present at the marriage of Bill and Gertrude and testified to this incident substantially in the same manner as William O'Neal. Before the marriage Bill lived upstairs, and after the "broom jumping" incident he moved downstairs. After the latter part of 1942 she often saw Bill and Gertrude. They were living together, sleeping together. She saw them in bed together as husband and wife. They lived together like that until he bought another rooming place on Decatur Street. After that he had to stay over there. Gertrude went to the hotel or rooming house on Decatur Street quite often.

Rubin Hall testified that Bill Jones had a room downstairs at 277 Forrest Avenue, and that while witness was there he heard everyone call deceased Mrs. Jones, and even Veronia Cannady had referred to Bill Jones as Uncle Bill. Napoleon Thomas testified that he was present at the "broom jumping" incident in 1942. Other witnesses testified that they had known Gertrude and Bill as husband and wife at various times since 1940. A. Mapp, a preacher and contractor, identified a Christmas card which he received in 1946. This card is signed by Mrs. Gertrude King Jones. The Jones appears to be a different style of writing from the first part of the signature. Witness stated that the card was like that when he received it. When he had done some repair work on the house on Forrest Avenue in 1945 he had known deceased as Gertrude King Jones. However, he identified

receipts which he had signed for payment for the work in 1945 which were made out to Mrs. Gertrude King. James Paul Manning testified that in 1942 or 1943 his firm had done some work at 277 Forrest Avenue and the woman there named Gertrude told him: "You collect the bill from my old man, Bill." Mary Collins testified she knew deceased as Gertrude Jones when deceased was living at 277 Forrest Avenue. John Collins, husband of Mary Collins, and other witnesses gave testimony to the effect that they had known the deceased as the wife of Bill Jones.

Jimmie Butler testified: He rented a room at 277 Forrest Avenue and moved there the day before Labor Day in 1940 and lived there about a year. He never knew Gertrude King by any other name, and never knew anybody to sell whisky or rent rooms to transients. All tenants were permanent. He did not know Gertrude King was married. Ben Meriwether testified: He began living at 277 Forrest Avenue about February 1, 1946, and was living there when Gertrude King died. He never knew her by any other name than Gertrude King, and did not know that she was married to Bill Jones. He had never seen Bill Jones until they met in court. Geneva Haugabrooks testified that she had known Gertrude King for 35 years and knew her as Gertrude King, and that deceased was a member of Turner Monumental Church and president of the choir there. Lillian Thurman testified that she lived at 277 Forrest Avenue and that Gertrude King was never known by any other name. C. C. Shanks knew Bill Jones and when Bill Jones had lived at his house in 1944 through a part of 1946 he had never claimed to have any wife living, although two or three different women had come to the house with him. He did not know Gertrude King.

Henry Jackson, pastor of Turner Monumental A. M. E. Church, testified: Gertrude King was a member of the church when he came there about eight years ago. She was president of the choir and a trustee and treasurer of the church. He never knew of her running a whisky joint or an assignation house. He knew Bill Jones. Gertrude was known to members of the church first as Gertrude Kidd and later as Gertrude King. Her name on the church bank account was Gertrude King and she signed the checks by this name.

R. A. Romans, presiding elder of the Atlanta District A. M. E. Church, testified that he had known Gertrude King seven or eight years and had visited her home on Forrest Avenue and had never known her by any other name than Gertrude King. Various other witnesses testified that Gertrude was known in the community only as Gertrude King and had never been known to sell liquor or to rent rooms to transients for immoral or illegal purposes, and that she was a regular attendant and active worker in her church.

The applicant introduced a number of receipts given Gertrude King in her business affairs reciting the payments were made by Gertrude King. No receipt was introduced of any business transaction wherein the name Gertrude Jones was used. The name used in every transaction was Mrs. Gertrude King, Mrs. G. King, Gertrude King, or G. King. She purchased a sewing machine in 1943 in the name of Gertrude King, purchased an automobile and registered the same in the name of Gertrude King, applied for a war-ration book in 1943 in the name of Mrs. Gertrude King, and paid her State and county ad valorem taxes, income taxes, light, water, and telephone bills in the name of Gertrude King. One writing is a bill of sale from Bill Jones to Mrs. Gertrude King, dated March 22, 1943, another, dated February 22, 1943, is a receipt for Gertrude King for a bedroom suite, signed by Bill Jones, and another is a paper addressed to Mrs. King, directing that an unnamed man have a room, signed by Bill Jones. The documentary evidence introduced by the applicant, when considered as a whole, covers a period from 1940 until the death of deceased in 1947. The caveator introduced the Christmas card identified by the witness Mapp, previously referred to, and a receipt made out to Gertrude King, acknowledging payment for work done by the witness Mapp, is included in the documentary evidence of the applicant. Writings showing the choice of Veronia Cannady as administratrix by the mother and brothers of the deceased were introduced in evidence by the applicant, over the objections of the caveator.

The jury found in favor of the applicant, Veronia Cannady, and judgment was rendered accordingly, and caveator moved for a new trial. The trial court overruled this motion, to which ruling and judgment caveator excepted to the Supreme Court,

and that court transferred the case to this court. *Jones* v. *Cannady*, 204 *Ga.* 292 (49 S. E. 2d, 527).

■ In ground 1 of his amended motion for a new trial the caveator contends that the trial judge erred in submitting the case to a jury because the court of ordinary was without jurisdiction to appoint the county administrator as permanent administrator of an estate unless it is an estate not likely to be represented and it appeared in the record that there were two contestants for the appointment; because Veronia Cannady had filed no exceptions to the appointment of a permanent administrator; and because the judgment of the court of ordinary appointing the county administrator as permanent administrator was void and therefore the judge of the superior court should have entered final judgment continuing Bill Jones as temporary administrator of the estate. There is no merit in this assignment of error. Code § 6-201 provides: "An appeal shall lie to the superior court from any decision made by the court of ordinary, except an order appointing a temporary administrator." Code § 6-501 provides: "An appeal to the superior court is a de novo investigation. It brings up the whole record from the court below, and all competent evidence shall be admissible on the trial thereof, whether adduced on a former trial or not; either party is entitled to be heard on the whole merits of the case." Code § 6-502 provides: "An appeal shall suspend but not vacate judgment." Code § 6-601 provides: "All appeals to the superior court shall be tried by a jury at the first term after the appeal has been entered, unless good cause shall be shown for continuance." The appeal in the superior court was a de novo investigation and the parties were entitled to have the issues tried and passed on by a jury and consequently the trial judge did not err in submitting the case to a jury.

■ Error is assigned in ground 2 of the amended motion on the refusal of the trial judge to direct a verdict in favor of Bill Jones, the caveator. It is not reversible error to refuse to direct a verdict.

■ While testifying for the caveator, William O'Neal was asked: "Do you know of any business transaction after that— the broom-jumping incident—in which she, Gertrude King, introduced herself as Mrs. Jones?" This witness answered: "Re-

cently—later on I started working at Mauldin's Furniture Company on Decatur Street, and she came there and bought furniture as Mrs. Jones." Counsel for Veronia Cannady then stated: "Well, I think there would be better evidence of that, buying furniture." The court then ruled: "If it's in writing, the highest and best evidence would be in writing. I sustain the objection." According to ground 3 of the amended motion this evidence was excluded and error is assigned on this ruling of the court. However, in substance, this allegedly excluded evidence is included in the approved brief of evidence. "Where the movant in a motion for a new trial complains of a ruling excluding certain testimony, and this testimony, in substance, appears in the approved brief of evidence, the apparent conflicting statements will be harmonized by holding that, notwithstanding the ruling, the court at some other stage of the witness's testimony allowed the evidence. Under such facts the ruling will not require a new trial, even if the evidence was admissible." *De-Nieff* v. *Howell*, 138 *Ga.* 248 (75 S. E. 202); *Cauthern* v. *Gresham Lumber Co.*, 57 *Ga. App.* 497, 498 (196 S. E. 242). Furthermore, it appears in the brief of evidence that this same witness testified that after the "broom-jumping" incident deceased always called herself Mrs. Jones, and that there was similar testimony by several other witnesses. Error requiring the grant of a new trial is not shown by ground 3 of the amended motion.

■ In special ground 6 of the motion error is assigned on the following excerpt from the charge of the court: "So I charge you in this case that if this caveator has shown—the burden is on him to prove to your satisfaction, by a legal preponderance of the evidence, that the allegations which he makes are correct— if he shows such and has carried the burden of proof, he would be entitled to a verdict at your hands." It is contended that "the court unduly stressed the burden of proof as it related to the duty of the caveator," and that it "was highly prejudicial to the rights of movant in that it indicated to the jury that in order for the caveator to prevail, the whole burden of proof as related to issues as made was upon the caveator and no part of the burden of proof rested upon the applicant to prove any fact incident to the right of applicant to maintain her contentions." After stating the contentions of the parties to the jury, the judge

charged: "Now, gentlemen, the court charges you that the effect of the pleadings, as you have them out with you and as you find them to be—and it is the law, for that matter—is to put the burden first on the applicant, Veronia Cannady, to show to your satisfaction, by a preponderance of the evidence, that the allegations which she makes in that application are true and correct. Except, of course, such allegations which may be admitted in open court or may be admitted in the answer you will accept as true without any further proof. The burden is upon the applicant, Veronia Cannady, in the first instance in this case to show that the application which she brings is correct and to show to your satisfaction, by a preponderance of the evidence, that these allegations are correct." After charging the above he later charged: "Now, gentlemen, as I have said to you, the law is that the burden, in the first instance, rests upon this applicant, Veronia Cannady, to establish the facts set out in her application. Such being the case, if, pursuing your deliberations in this matter to this point, you should reach the conclusion that she has not carried the burden of proof and has not proven the facts set out in her application, and you so find, that would be an end of your deliberations in this case and you should stop and return a verdict for the caveator and against the applicant; but, if you should find, in your deliberations to this point, that Veronia Cannady has carried the burden of proof and shown to your satisfaction, by a preponderance of the evidence, that the allegations she made in that application are true, then the burden would be on the caveator to show to your satisfaction, by a preponderance of the evidence, that the facts and allegations which he made and set out in his caveat are correct; and the same rules apply to him, and the same burden is on him to show to you, by a preponderance of the evidence, that the facts set out in his caveat are correct." He then charged the law relating to ceremonial and common-law marriage, and followed this with the charge on which error is assigned as set out above. Code § 38-103 provides: "The burden of proof generally lies upon the party asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential. If a negation or negative affirmation be so essential, the proof of such negative lies on the party so affirming it." The burden was upon

the applicant first to sustain her right to be appointed administratrix, and in this respect evidence was introduced to the effect that deceased was not married at the time of her death, had no children, and that the next of kin were her mother and two brothers, and that the applicant had been selected by the next of kin as the person to be appointed administrator. To defeat the right of the applicant the caveator, Bill Jones, alleged that he was married to the deceased at the time of her death, and the burden of proof as to the existence of this affirmative fact was upon him. *Drawdy* v. *Hesters*, 130 *Ga.* 161 (60 S. E. 451, 15 L. R. A. (N. S.) 190); *Jenkins* v. *Jenkins*, 83 *Ga.* 283 (9 S. E. 541, 20 Am. St. R. 316); *Clark* v. *Cassidy*, 62 *Ga.* 407. The case of *Mobley* v. *Lyon*, 134 *Ga.* 125 (67 S. E. 668, 137 Am. St. R. 213, 19 Ann. Cas. 1004), cited in the dissenting opinion, was a proceeding to probate a will, where the only issue raised by the caveat was that the will was not signed and executed by the purported testatrix, but was a forgery, and it was there ruled that "it was error for the presiding judge, after instructing the jury that before they could set up the will and before a case was made out on the part of the propounders, it must be shown to their satisfaction that the alleged testatrix signed the instrument in the presence of all three of the witnesses whose names appeared thereon, to add that when this was done the burden of proving that the instrument was a forgery or was not the last will and testament of the alleged testatrix and that it had not been proved as the law required was shifted to the caveator, and that in order to carry this burden it was upon him 'to satisfy the jury of the truth of his contentions' before they would be authorized to find in his favor." There being but one issue in that case, viz.—whether the purported testatrix signed and executed the will according to law, the burden was on the propounder to prove the factum of the will and the capacity of the testatrix to make it, and the burden did not shift to the caveator, under the facts of that case.

While the burden of proof in a proceeding to probate a will is on the propounder, in the first instance, to prove the factum of the will and the capacity of the testator to make it, the burden may shift to the caveator, depending upon the issue or issues raised by the caveat. It was held in *Slaughter* v. *Heath*, 127 *Ga.*

747 (9) (57 S. E. 69, 27 L. R. A. (N. S.) 1): "Upon the trial of an issue arising upon the propounding of a will and a caveat thereto, the burden, in the first instance, is upon the propounder of the alleged will to make out a prima facie case, by showing the factum of the will, and that at the time of its execution the testator apparently had sufficient mental capacity to make it, and, in making it, acted freely and voluntarily. When this is done, the burden of proof shifts to the caveator." Also, see *Freeman* v. *Hamilton*, 74 *Ga.* 317; *Credille* v. *Credille*, 123 *Ga.* 673(2) (51 S. E. 628, 107 Am. St. R. 157); *Potts* v. *House*, 6 *Ga.* 324 (1), 334 (50 Am. D. 329); *Stancil* v. *Kenan*, 35 *Ga.* 102; *Evans* v. *Arnold*, 52 *Ga.* 169; *Thompson* v. *Davitte*, 59 *Ga.* 472, 475. In *Farmers State Bank* v. *Kelley*, 159 *Ga.* 280 (125 S. E. 467), no affirmative defense was set up and it was held to be error for the judge to instruct the jury as to the shifting of the burden of proof to the defendant. The caveator contended that he was the husband of the deceased at the time of her death and that he was entitled to administer upon her estate. This was an affirmative defense and the burden of proof in this respect was upon him. The charge complained of was adjusted to the pleadings and evidence, particularly when considered with other parts of the charge relating to the burden of proof, and no error is shown by ground 6 of the amended motion.

■ After the jury returned a verdict in favor of the applicant, Veronia Cannady, the court entered judgment appointing applicant as administratrix of the estate of the deceased, Gertrude King. Error is assigned on this judgment in ground 7 of the amended motion on the ground that the judge of the superior court is without authority to appoint a person as administrator, and because the attempted appointment was void. This ground of the motion affords no cause for the grant of a new trial. "Objections which go to the judgment only, and do not extend to the verdict, can not properly be made grounds of a motion for new trial. A motion for new trial seeks to set aside the verdict. No new trial is necessary to correct a judgment or decree. If a judgment or decree is erroneous or illegal, direct exception should be taken to it at the proper time." *Barber* v. *Barber*, 157 *Ga.* 188 (1) (121 S. E. 317); *Mitchell* v. *Aiken*, 75 *Ga. App.* 514, 515 (43 S. E. 2d, 581).

"It is true, that the superior court can not grant letters testamentary, or of administration; but it is not true, that it can not carry its judgment into effect.  To that judgment it gives effect, by issuing its mandate to the court of ordinary, if it deem it meet and proper that such letters should be granted; and having authority to enforce the obedience of that court, it thus executes its judgment."  *Findley* v. *Whitmire*, 15 *Ga.* 334.  This rule was followed in *Watson* v. *Warnock*, 31 *Ga.* 694, 698.

■ Ground 5 of the amended motion is merely an elaboration of the general grounds and will be considered together with the general grounds of the motion.  The controlling issue presented by the pleadings and evidence was whether or not Bill Jones was the common-law husband of the deceased.  The evidence, in substance, is set out above, and though conflicting, authorized the verdict in favor of the applicant.

■ The trial judge did not err in overruling the caveator's motion for a new trial.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, page 232, Code (Ann. Supp.) § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed.  Sutton, C. J., MacIntyre, P. J., Gardner, Parker and Townsend, JJ., concur.  Felton, J., dissents.*

FELTON, J., dissenting.  I think that the charge of the court as complained of in the 6th ground of the amended motion and treated in division four of the opinion was error requiring the grant of a new trial.  The application of Veronia Cannady for letters of administration alleged that she had been selected by the mother of the deceased and that petitioner was a niece of the deceased.  The application was amended by adding the written selection of petitioner by two brothers of the deceased.  Bill Jones filed a caveat to the application alleging that neither the applicant nor those who selected her were the next of kin of the deceased but that he was the husband and sole heir at law of the deceased.  It will be noted that the application did not allege that the persons selecting the applicant were a majority of the nearest of kin.  Since the application did not negative the fact that the applicant was entitled to the appointment, the applica-

tion was not subject to general demurrer. *Medlin* v. *Downing Lumber Co.*, 128 *Ga.* 115, 118 (57 S. E. 232). I do not think that the general rules of pleading apply to applications for letters of administration. If there is a caveat the burden of proof is on the applicant to show that he or she is entitled to the appointment, whether there is such an allegation in the application or not. Under the judge's charge in this case the applicant made out her case by simply proving that the mother and two brothers selected her to act as administratrix and the burden was then placed on the caveator to show that they were not the majority of the nearest of kin, whereas, under the law as I understand it, the burden of proof was on the applicant to show that those who selected her were the majority of the nearest of kin which necessarily included the fact that neither the applicant nor any other man was the husband of the deceased. The caveat in this case did no more than deny the things which it was the applicant's duty to prove. If it should be argued that the caveator could be appointed merely because the applicant failed to prove that he was not the husband by a preponderance of the evidence the answer is that it is just as reasonable and equitable as for the applicant to be appointed because the caveator failed to prove by a preponderance of the evidence that he was the husband and sole heir. The burden of proof lies with the person starting the litigation and asserting facts. If the caveator had made the application the burden would have been on him. *Weeks* v. *Sego*, 9 *Ga.* 199. The fact that an affirmative is alleged in a caveat does not necessarily place the burden on the caveator and in cases analogous to this one similar charges have been held to be erroneous. *Mobley* v. *Lyon*, 134 *Ga.* 125 (67 S. E. 668, 137 Am. St. R. 213, 19 Ann. Cas. 1004) ; *Farmers State Bank* v. *Kelley*, 159 *Ga.* 280 (125 S. E. 467). The making out of a prima facie case by the party originally having the burden of proof does not relieve him of the duty of ultimately establishing the essential facts of his case by a preponderance of the evidence. *Richter Brothers* v. *Atlantic Co.*, 59 *Ga. App.* 137 (200 S. E. 462). The case cited by the majority as authority for their ruling in my opinion does not support the ruling. The statement made therein (*Drawdy* v. *Hesters*, supra) is taken from *Clark* v. *Cassidy*, 62 *Ga.* 407, 410. In the latter case an administrator brought bail

trover against Clark for certain personalty. Clark contended the deceased was his wife and that he was her sole heir and that there were no debts. My opinion is that the effect of the ruling in that case is that the burden of proof of showing title in defendant was on him not merely because he claimed to be her husband but because letters of administration had been granted to another and he admitted possession of the property under an adverse claim which relieved the plaintiff from proving a conversion.

I think the burden of proof was on the applicant to prove that she was entitled to administer the estate, that this included the fact that the caveator was not the husband of the deceased, and that the court erred in placing the burden of proof on the caveator of proving that he was the husband of the deceased.