## 20945. BARNEY v. BARNEY.

DECIDED JULY 14, 1931.

*Lewis A. Mills,* for plaintiff.
*Spence M. Grayson, H. Mercer Jordan,* for defendant.

LUKE, J. Sarah Barney applied to the ordinary of Chatham county for letters of administration on the estate of Prince Barney, alleging that he died intestate on September 22, 1929, leaving an estate of personalty and realty of the value of $1,000, and that she was the mother and only heir of said intestate. At the November term, 1929, of said court, Hettie Barney filed a caveat to the petition, alleging: 1. "Caveator shows that she is the legal wife of the said Prince Barney, deceased, and as such is entitled to administer on his estate." 2. "That she is the sole living heir of the said Prince Barney and is entitled to inherit all of his estate." 3. "That there are no other living heirs, and that she and Prince Barney were lawfully married in June, 1918, and have continued to live together as husband and wife until his death."

The ordinary rendered a judgment in favor of the caveatrix, and on appeal the jury found for the caveatrix, and the court

entered a judgment accordingly. Sarah Barney's exception is to the judgment overruling her motion for a new trial.

It appears from the record that the caveatrix (née Hettie Hargrove) married William Green on February 3, 1901; that on July 13, 1918, she went through the form of a legal marriage with Prince Barney before she had procured a divorce from William Green; and that in March, 1919, she obtained a divorce from William Green. She testified that she and William Green were living in a state of separation in July, 1918, and that she had filed her petition for divorce; that she and Prince Barney "continued to live together as husband and wife from July, 1918, until the date of his death, September 22, 1929;" that they lived in the same house, and Prince Barney introduced her to his friends and held her out to the public as his wife; that after she was granted a divorce from William Green in March, 1919, she and Barney continued to live together as man and wife; that she always went under the name "Hettie Barney;" and that in a certain letter, which had been lost, Barney called her "My own dear wife." Dr. Hanks testified that as admitting officer of the Marine Hospital at Savannah, Ga., in the middle of the summer of 1929, it was his duty to question each patient entering the hospital, in order to make a chart, and that in response to the question: "Who is your nearest relative or friend?" Prince Barney answered: "My wife, Hettie Barney." E. Ormonde Hunter testified: that he had known Prince Barney and Hettie Barney for more than ten years; that in 1921 and 1922 Hettie Barney was working for his family; that witness had "often passed their home at Baker's Crossing, and had seen Prince Barney occupying the same house;" that Prince brought Hettie to and from her work; and that from his observation during the time he knew them, he believed them to be husband and wife. C. R. Brady testified: that he "had known Hettie and Prince Barney for fifteen years;" that they had often traded at his place on the Isle of Hope; that he "always knew them as husband and wife;" that their reputation in that community was that of husband and wife; and that during the time he had known them since 1918, they "had lived together in the same house at Baker's Crossing . . under the name of Barney." D. R. Roth testified: that he had been running a store at the Isle of Hope about half a mile from Baker's Crossing since about 1919, and that he had known

Prince and Hettie Barney for about ten years; that he had always known them as husband and wife; and that "they lived in the same house at Baker's Crossing as Prince Barney and Hettie Barney, and that their reputation . . in that community was that of husband and wife." Henry Jenkins testified: that he lived about a quarter of a mile from Baker's Crossing, and had known Hettie and Prince Barney for about fifteen years; that "they had lived together in the same house at Baker's Crossing since he had known them, and that they had the reputation in that community as to their relationship as that of husband and wife;" that "Prince Barney introduced Hettie Barney to him at his store as his wife;" and that "they lived together until Prince Barney died." Joe Bandy testified: that he had known Prince and Hettie Barney for about eight years; that "they lived together as husband and wife at Baker's Crossing," and that they bore the reputation in that community of being husband and wife. Shelby Myrick testified that he had known Prince and Hettie Barney for about ten years, and for several years had represented them as their attorney at law, and that Prince represented Hettie Barney as his wife. There was other testimony to the effect that Prince had represented Hettie as being his wife, and that they bore the reputation of being man and wife.

We shall now set out the gist of the evidence adduced in behalf of the applicant, Sarah Barney. Jasper Hayes testified that he had never known that Prince Barney and Hettie Green were married, and that they lived together at Baker's Crossing before Prince went off to the army in 1917. Davis Milton testified that he had married Sarah Barney's niece, and had known Hettie Green and Prince Barney for a long time, but did not know anything about their being married, and that they lived together at Pin Point before Barney went to war in 1917. In addition to testifying substantially as did Davis Milton, Hattie Knight swore that she was a niece of Sarah Barney and had known Hettie Green and Prince Barney for a long time, and that the church refused to admit Prince, because "he was living in adultery with Hettie Green and a living husband undivorced, who also lived at Baker's Crossing." After testifying substantially as did Jasper Hayes, Louis Mc-Keever swore that "they were staying together before Prince went off to the army in 1917 the same as they were a few years ago."

Sarah Barney testified, in substance, that Hettie Green and her son Prince Barney "cohabited and lived together in Savannah;" that they later moved out to Baker's Crossing, a long time before Prince went off to the army; that witness had constantly remonstrated with Prince for living in adultery with Hettie Green, and had done so in Hettie's presence; that Prince had never said that they were married; that before Prince went to the army Hettie had said in his presence that she intended to get a divorce from Green and marry Barney; and that Prince Barney "absolutely knew long before the date of the marriage certificate issued in 1918 to Hettie Hargrove and Prince Barney that Hettie Hargrove had a living husband undivorced, living near them at the time, whose name was William Green. Sarah Barney introduced in evidence "a certified copy of the marriage certificate of William Green to Hettie Hargrove on February 2, 1901," and the case was closed.

Referring to the methods by which marriage may be proved, Justice Jackson, in the case of *Clark* v. *Cassidy, 62 Ga.* 407, 411, speaking for the court, said: "This may be done by record evidence, or by witnesses who saw the ceremony performed, or heard the contract of marriage solemnized, or by any such circumstances as the act of living together as man and wife, holding themselves out to the world as such, and repute in the vicinity and among neighbors and visitors that they are such, and indeed all such facts as usually accompany the marriage relation and indicate the factum of the marriage. The evidence in each case is for the jury." The foregoing language was quoted with approval in *Drawdy* v. *Hesters, 130 Ga.* 161, 163 (60 S. E. 451, 15 L. R. A. (N. S.) 190). In *Jenkins* v. *Jenkins, 83 Ga.* 283 (9 S. E. 541, 19 Am. St. R. 316), this language appears: "With no competing actual marriage proved, the law presumes marriage from cohabitation and repute." See also *Harper* v. *Atlanta & West Point R. Co., 33 Ga. App.* 259 (3) (125 S. E. 885). Applying the foregoing authorities to the evidence in the case at bar, we hold that the jury had the right to conclude that the caveatrix was the lawful common-law wife of Prince Barney at the time of his death, and that the right to administer his estate was in her. Therefore we hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

While not entirely accurate, the extracts from the charge of the

court, complained of, do not, in our opinion warrant a reversal of the judgment; and we reach this conclusion the more readily for the reason that the evidence so conclusively shows a common-law marriage between the caveatrix and Prince Barney.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*